[Civ. No. 11535. First Dist., Div. Two. July 22, 1941.]

NANNIE S. JORGENSEN et al., Appellants, v. EAST BAY TRANSIT COMPANY (a Corporation), Respondent.

Nathan G. Gray for Appellants.

Donahue, Richards & Hamlin for Respondent.

STURTEVANT, J.—While riding in one of the passenger busses of the defendant, Frederick C. Jorgensen fell or was thrown against the back of a seat. He suffered an injury at the time. About three months later he died. Nannie S. Jorgensen, his widow, and four adult children, commenced this action to recover damages alleging that the injury exacerbated a preexisting ailment and caused the death of the decedent. The jury returned a verdict in favor of the defendant and from the judgment entered thereon the plaintiffs have appealed. They contend that the trial court committed prejudicial errors in refusing to give several instructions which the plaintiffs asked.

The transcript sets forth the charge of the court and the instructions which were given by the court acting upon the request of the plaintiffs or the request of the defendant. The jury was instructed with most meticulous care on every point of law except as will hereinafter be noted. Before we proceed it should also be mentioned that at the end of the plaintiffs' case the defendant immediately proceeded to take up the proof; and, if we understand the record correctly, it produced every one of its employees who might have been driving the bus in which the alleged injury was caused.

In defendant's instruction No. 2, which was given by the trial court, the difference between jerking motions caused by ordinary movements and such motions caused by negligent operation of cars was clearly delineated. Plaintiffs' instruction No. 1, which was not given, was as follows: "In order to make out a *prima facie* case against the defendant East Bay Transit Company, a corporation, in this action, it is sufficient for the plaintiffs to show that the decedent, Frederick C. Jorgensen, received an injury that was one of the proximate causes of his death, and that such injury, if any, was sustained by the decedent while he was a passenger upon one of the automobile coaches of, and being operated by the defendant on Sacramento Street, in the City of Berkeley, and that said injury, if any, was sustained by decedent by reason of his being thrown against a seat in the interior of said automobile coach by the sudden starting of said coach by said defendant, East Bay Transit Company, a corporation, after said coach had been stopped for the purpose of enabling the decedent to board it. The law does not impose upon the

plaintiffs the duty of showing that at the time of said accident the decedent was free from fault, or did not contribute by his own negligence to the injury, if any, that is referred to in the complaint.'' It will be noted at once that the instruction, in effect, would hold that the defendant would be liable for acts caused by the sudden starting of the coach whether by its ordinary movements or otherwise. The subject matter was correctly set forth in defendant's instruction No. 2 and plaintiffs' instruction No. 4, which were given, and the court did not err in refusing to give plaintiffs' instruction No. 1.

■ Plaintiffs' instruction No. 12, which the trial court refused to give, was as follows: "A *prima facie* case for the plaintiffs is established when the plaintiffs show that the decedent was injured while being carried as a passenger by the defendant, East Bay Transit Company, a corporation, and that said injury, if any, was one of the proximate causes of the death of the decedent, and that such injury, if any, was caused by the act of the defendant in the exclusive control of the movement of the coach used in its business. In such cases there is a *prima facie* inference of negligence which throws upon the defendant the burden of showing that the injury, if any, was sustained without negligence on its part.'' As shown above the plaintiffs had introduced evidence to the effect that when the decedent was taking his seat he fell or was thrown back against the seat just as the car was starting. The defendant's witnesses had testified that at the time and place mentioned in the complaint the defendant's coach did not start with any unusual jerk or motion. When the record so stood said instruction was asked. Before we proceed it is proper to state the condition of the record as it stood at that time. The plaintiffs had called as their witness Charles Garlinghouse. He and Frederick C. Jorgensen, the deceased, were fellow employees working for the Albers Company at the mole in Oakland. Both were working night shifts, both resided in Berkeley, and both rode at times on the busses. At the time of the accident complained of Mr. Garlinghouse had boarded the bus and was in his seat when the decedent entered the bus and took his seat. No other passengers were in the bus. Mr. Garlinghouse testified that it was at ten minutes after ten in the evening. Speaking of the movements of the car, in substance, he testified: "Well, to

tell you the truth at the time I didn't think anything about it. I was sitting alongside the window. The bus started with a jerk and threw him back against the seat. I don't know how to describe it any more than that the bus started with a jerk. I cannot recall now whether I felt the jerk. It is hard to tell. You feel most all of the jerks on the bus. He was just sitting down when the bus started and threw him back, you see. I cannot say whether he had started to bend his knees to sit before the accident occurred. My best recollection is, though, he was in the act of sitting down." No complaint was made of an accident until six weeks later. At the time of the trial the defendant called as witnesses W. B. James, L. L. Barker, and W. B. Basserman. Each was one of the bus drivers on the night of the accident. Mr. James drove the bus which left the junction of Sacramento Street and Virginia Street at ten minutes past ten. He testified directly and positively that there were no unusual jerks or motions of the bus. Mr. Barker drove the bus leaving at 9:50, and testified positively that there was nothing unusual in starting or stopping the bus. Mr. Basserman testified that he drove the bus leaving at 10:30 and that he did not stop at the above mentioned point. The uncontradicted evidence was that the deceased was a passenger on one of the busses being operated at the time and place alleged in the complaint of the plaintiffs; that he fell back against the back of the seat he was about to occupy; and that his act was caused by the movement of the bus. The sole fact to be tried was whether there was an unusual or violent movement or jerk of the bus. (*McIntosh* v. *Los Angeles Ry. Corp.*, 7 Cal. (2d) 90 [59 Pac. (2d) 959].) As to that fact it will be noted there was no conflict in the evidence. Plaintiffs' witness did not testify directly nor in effect that there was a *violent or unusual* jerk. Defendant's witnesses testified positively that there was not. Both sides had given direct evidence on the subject. In 45 C. J. 1206, the general rule is stated as follows: "Hence the presumption or inference arising from the doctrine cannot be availed of, or is overcome, where plaintiff has full knowledge and testifies as to the specific act of negligence which is the cause of the injury complained of, or where there is direct evidence as to the precise cause of the accident and all the facts and circumstances attendant upon the occurrence clearly appear." The

rule so stated obtains in this state. (*Connor* v. *Atchison etc. Ry. Co.*, 189 Cal. 1, 5, 6 [207 Pac. 378, 22 A. L. R. 1462]; *Engstrom* v. *Auburn Auto. Sales Corp.*, 11 Cal. (2d) °64 [77 Pac. (2d) 1059]; *Carlsen* v. *Diehl*, 57 Cal. App. 731, 737 [208 Pac. 150].)

Plaintiffs' decedent died October 12, 1939. Until shortly prior to his death he had been cared for at the county hospital in Alameda County. After his death Dr. G. V. Mason, the autopsy surgeon, executed and caused to be re-corded a death certificate. During the trial both the plaintiffs and the defendant produced certified copies of that death certificate. The plaintiffs offered their copy in evidence. It was received without objection, was used by both parties, and moreover, after the jury had retired to deliberate on their verdict they sent for the death certificate and · the court promptly ordered it sent to the jury room. The plaintiffs asked an instruction quoting the provisions of the Code of Civil Procedure, section 1833, defining *prima facie* evidence, another quoting the provisions of section 1958, defining inferences, and another quoting the provisions of section 10551 of the Health and Safety Code, which defines the evidentiary effect of a death certificate. All three instructions were refused. Such refusal did not constitute error. All three of the proposed instructions were addressed to one specific piece of evidence—the said death certificate. The plaintiffs were not entitled to have the trial court "stress a specific part of the evidence." (*Jesse* v. *Giguiere,* 24 Cal. App. (2d) 160, 165 [74 Pac. (2d) 310], and authorities there cited.)

During the trial the plaintiffs attempted to present two alternative theories to show that the alleged accident caused the death of decedent. The first theory recognized the fact that the deceased suffered from a cancer of long standing which caused his death, but attempted to establish the theory that the trauma, which decedent was alleged to have received, exacerbated its growth and hastened his death. As a second and alternative theory plaintiffs attempted to show that the alleged trauma caused an abscess which caused or contributed to Mr. Jorgensen's death. Their proposed instructions 7 and 13 were addressed to their theories. They complain because neither one was given. It is sufficient to state that plaintiffs' instruction No. 5, which was

given, fully covered the first theory, and plaintiffs' instruction No. 4, which was given, fully covered the second theory.

The judgment is affirmed.

Nourse, P. J., and Spence, J., concurred.

A petition for a rehearing was denied August 21, 1941, and appellants' petition for a hearing by the Supreme Court was denied September 13, 1941.