## REYNOLDS v. MAY DEPARTMENT STORES CO.

No. 11932.

Circuit Court of Appeals, Eighth Circuit.

April 8, 1942.

Rehearing Denied April 27, 1942.

Jesse W. Barrett, of St. Louis, Mo. (Joseph J. Howard, of St. Louis, Mo., on the brief), for appellant.

James E. Garstang, of St. Louis, Mo. (Carter & Small, of St. Louis, Mo., on the brief), for appellee.

Before THOMAS and JOHNSEN, Circuit Judges, and REEVES, District Judge.

JOHNSEN, Circuit Judge.

The controlling question is whether, under the law of Missouri, the District Court erred in refusing to submit to a jury the sufficiency or insufficiency of a department store's care to protect an infant invitee from injury through the use of a standard escalator.

Plaintiff, a four year old child, had accompanied his mother to the department store operated by defendant in the city of St. Louis. They were intending to purchase some clothing for plaintiff and took the escalator which ran from the first to the second floor, where the children's clothing department was located. Plaintiff's mother held his hand as they stood together on one of the ascending steps or treads. As they neared the top of the escalator, she prepared to assist him to get off, by putting her hand under his arm. At that instant he fell forward, with his

---

hands outstretched in front of him. Some of his fingers became caught between the tines or teeth of the comb-plate at the top of the escalator and the steps which moved under it, and the third finger of his right hand was sheared off.

The teeth of the comb-plate were 9/32 of an inch in width and had a space of 19/32 of an inch between them. The evidence on behalf of plaintiff showed that there was a space of over a quarter of an inch between the ends of the teeth and the grooves in the moving steps, as they passed under the comb-plate; that a cigarette or a 5/16 inch dowel pin could pass through this opening; that the height of the steps was such as to make them come almost to plaintiff's knees; that the handrails on the sides of the escalator, which were synchronized to the upward movement of the steps and were intended as a safety auxiliary for passengers, were adapted primarily to adult use, and were too high and too far apart to be capable of use by plaintiff; and that there were no attendants at either end of the escalator, to assist, to caution, or to give directions to passengers with respect to the manner of getting on or getting off, or the position to be maintained while on the escalator.

The trial court instructed the jury, at the close of all the evidence, that plaintiff was not entitled to recover against defendant for his injuries, because the testimony had failed to establish that it was possible to construct or operate an escalator without the existence of such a space or opening between the comb-plate and the disappearing steps, as was present in this case. He summarized the problem which presented itself to his mind, in the following language, to the jury: "Has any witness said that these escalators can be operated without a hole there, and that they were operated and that common, careful practice at that time required them to be operated without this aperture at that place? No witness has testified to that. You are just called upon to draw upon your imagination and to express your opinion as to whether or not you think that that was a negligent construction. I don't think we can submit a case to a jury that way."

It seems to us that the trial court placed too narrow a construction upon the issues presented by the pleadings and the evidence. The question, under the petition, was not so much whether the construction employed was a necessary one, as whether, with the existing construction, the escalator presented anticipatable dangers in its use by small children, which defendant reasonably could and should have taken other precautions to protect against, or, if no other reasonable safeguards were possible, whether the dangers were such that the use of the escalator ought not soundly to have been open to infant invitees. The evidence on behalf of plaintiff indicated, as we have previously stated, that the handrails were not capable of providing auxiliary or balancing support for an infant of plaintiff's size; that the height of the steps was such as to come almost to plaintiff's knees and as might possibly, without some auxiliary or balancing support, become a contributing factor in causing him to stumble, if he made any forward movement on the tread; and that there were no attendants at either end of the escalator to assist, caution or give directions to him or to any one accompanying him, as to the proper position to be taken on the escalator, the preserving of his balance, and the avoiding of any effort to press forward as the escalator neared the second floor.

In this situation, we think it was for a jury to say whether defendant had exercised the degree of care which the law imposed upon it for plaintiff's safety, when it invited him to use the escalator, with its existing mechanical construction, its lack of useable supportive handrails, and its unsupervised operation, and whether, if it found that defendant had failed to exercise the proper degree of care, this could be said to have been the proximate cause of plaintiff's injuries. This conclusion is further compelled by the holding and implications in Graves v. May Department Stores Co., Mo.App., 153 S.W.2d 778, and Jablonski v. May Department Stores Co., Mo.App., 153 S.W.2d 786, which have been decided by the Missouri courts since the present case was tried in the District Court.

In each of the two cases cited, the action similarly was one for injuries sustained by an infant in connection with the comb-plate of an escalator, which is admitted in the briefs here to have been identical in construction and operation with that involved in this case. The accidents in fact occurred in the same store as that which is involved here. The court held in each instance that, whether the defendant

had exercised the necessary care to avoid the accident and, if it had not, whether its negligence was the proximate cause of the injuries were questions that should be submitted to the jury for determination.

Defendant attempts to distinguish these cases from the present one, on the ground that the liability there rested on the attractive nuisance theory. But this is not a controlling distinction on the fundamental question that is involved. If the operation of the escalator created dangers to children, whether as a carrier of passengers or as an attractive nuisance, defendant owed the legal duty of exercising such care as would reasonably protect against the probable dangers of either relationship. Where the evidence was such as to suggest that other practical measures of protection might possibly have been taken in the particular relationship, or to permit a sound doubt as to whether, if no other reasonable measures were possible, the infant ought at all to have been invited or allowed to be exposed to the hazard, the questions, with equal reason in either case, would have to be regarded as matters for jury determination. In the present case, as the court said in the Graves case, at page 784 of 153 S.W.2d, "we cannot say that the facts in evidence and the inferences reasonably to be drawn therefrom are so strongly against plaintiff as to leave no room for reasonable minds to differ."

The judgment will be reversed and the cause remanded for a new trial.

Reversed and remanded.