[Civ. No. 13822.   Second Dist., Div. Three.   Aug. 9, 1943.]

TAKASHI KATAOKA, a Minor, etc., et al., Appellants, v. THE MAY DEPARTMENT STORES COMPANY (a Corporation) et al., Respondents.

Albert E. Coger for Appellants.

Schell & Delamer for Respondents.

SHAW, J. pro tem.—This action is brought to recover damages for personal injuries suffered by plaintiff, Takashi Kataoka, who was, when he was injured, a boy four years of age. The first three counts of the complaint set forth, in varying forms, his cause of action to recover damages for his own injuries. In a fourth count, plaintiff Tsutomu Kataoka, who is the father of the other plaintiff, seeks recovery for liabilities he has incurred for medical, hospital and nursing treatment for his son. In the following opinion the word "plaintiff" will be used to designate the plaintiff Takashi Kataoka, unless otherwise indicated. Both plaintiffs appeal from a judgment against them entered after a directed verdict in favor of defendants.

The defendant corporation conducts a large department store in the city of Los Angeles. At the time plaintiff was injured this store had, upon its third floor, a department sell-

ing infants' and children's wear, for babies and for children between the ages of two and six. Plaintiff's mother went to this department to exchange a suit bought for another of her children, taking plaintiff with her. While she waited for and talked to the manager of this department (defendant Goddard) the plaintiff was walking around at a distance of about fifteen feet from her. In the store were a series of escalators for carrying the public from floor to floor, and the place where plaintiff was walking around on the third floor was quite near to the lower end of the escalator coming down from the fourth floor to the third floor. When plaintiff's mother started to talk to defendant Goddard she called plaintiff to come to her. He was then two or three feet from the escalator and she saw him come two or three feet toward her. After that she stood diagonally facing plaintiff and talked to Goddard two or three minutes without observing plaintiff. At the end of that time she heard plaintiff cry and she and Goddard rushed to him and found his right hand caught in the escalator.

This escalator had at its lower end, fastened to the floor where the moving steps disappeared under the floor, a device designated as a "comb plate," the purpose of which was, if some passenger did not lift his feet up and step off the escalator, to slide them gradually up on the plate. This comb plate had forty or fifty teeth $3\frac{1}{2}$ inches long and 9/16 inch apart. Between the comb plate and the steps as they passed under it there was a space about $\frac{1}{4}$ inch deep. There was no guard or attendant stationed at this or any of the escalators at the time of the accident, although on busy days it was the custom to have such an attendant.

Plaintiff's hand was caught in the space between the comb plate and the steps passing under it. Goddard stopped the escalator, took hold of plaintiff's wrist and tried to pull his hand out, but was unable to do so. Then he got a key which was kept near by and reversed the escalator. When it started going in the opposite direction plaintiff's hand at once came out. Two fingers were mangled, crushed and cut off, so that now only short stumps are left.

No witness saw plaintiff just before his hand was caught and hence there is no direct testimony disclosing how it happened. The theory of plaintiff's counsel is that plaintiff was attracted to the escalator by its bright appearance and moving steps, went to it and in childish curiosity reached out his hand to investigate the steps and thus got caught.

Confirmatory of this theory, there is testimony by plaintiff's mother that "he was very active and he was very much interested in everything, like a boy. He was always breaking it up and trying to look into the inside, and things like that . . . he was very anxious to know everything that was around him." There is also testimony that the sidewalls of the escalator were of steel or chrome and the steps of steel. It had been installed only ten months to a year before the accident, so the jury might infer that each of these metals was still bright. A moving device like an escalator would attract the attention of most children of plaintiff's age, but especially of one with such an active curiosity as that shown by his mother's description of plaintiff. Defendants suggest other possible causes for the plaintiff's mishap, and contend that the theory advanced in behalf of plaintiff is based on pure speculation and conjecture, but we think the jury would have been warranted by reasonably certain inferences from the evidence in accepting plaintiff's theory.

The question here for decision is whether, on the foregoing facts, and a few others which we shall mention as they become pertinent to our discussion, the court should have directed a verdict for defendants. The power of the court in passing upon such a motion is strictly limited. It has no power to weigh the evidence, but must view it in the light most favorable to the party against whom the direction is asked and accept every inference and presumption in his favor that may legitimately be drawn therefrom, and the motion can be granted only when, on such a consideration of the evidence, the result is a determination that there is no evidence of sufficient substantiality to support a verdict in favor of that party if one were given. (*Gish* v. *L. A. Ry. Corp.*, (1939) 13 Cal.2d 570, 573 [90 P.2d 792]; *Newson* v. *Hawley*, (1928) 205 Cal. 188, 190 [270 P. 364]; *Wiswell* v. *Shinners*, (1941) 47 Cal.App.2d 156, 159, 163 [117 P.2d 677]; *Barty* v. *Collins*, (1930) 109 Cal.App. 94, 96 [292 P. 979].)

In answering the question above put as to the propriety of the directed verdict, we deal with the defendants separately, reaching a different answer for each of them. We take up first the case of the defendant corporation. Plaintiff contends that it was required to exercise the highest degree of care toward him, likening the escalator to an elevator and citing cases where operators of elevators and escalators were

held to the exercise of such care toward their passengers. But while the rule of care which plaintiff invokes may bind carriers of passengers, in proper cases, both before and after the actual carriage, it does not extend to cases where the relation of carrier and passenger does not exist. Plaintiff here was not using the escalator as a means of transportation when he was injured, he had not previously done so and there is nothing to indicate that he or his mother intended to use it thereafter. The business which his mother was then transacting, and the activities of plaintiff himself, bore no relation to the matter of transportation. Plaintiff cannot be regarded as a passenger. He was, at the time in question, simply a business invitee of defendant corporation, and to him it owed the duty which exists in all such cases, that is, to use ordinary care to keep the premises reasonably safe for those so invited to go upon them. (*Koppelman* v. *Ambassador Hotel Co.*, (1939) 35 Cal.App.2d 537, 540 [96 P.2d 196]; *Tuttle* v. *Crawford*, (1936) 8 Cal.2d 126, 130 [63 P.2d 1128].)

■ "The term 'ordinary care' is a relative one, and the standard by which it is to be measured varies . . . with the circumstances attending each particular case." (19 Cal.Jur. 579; *Lolli* v. *Market St. Ry. Co.*, (1941) 43 Cal.App.2d 166, 168 [110 P.2d 436].) "Care must be in proportion to the danger to be avoided and the consequences that may reasonably be anticipated as the result of conduct, and the circumstances may be such that far greater care is exacted from one party to an action than from the other." (19 Cal.Jur. 579, 580; see also *Hatzakorzian* v. *Rucker-Fuller Desk Co.*, (1925) 197 Cal. 82, 98 [239 P. 709, 41 A.L.R. 1027].)

■ One of the factors affecting the care to be exercised may be the presence of children on the scene. In this case the accident happened in the infants' and children's wear department of a large store. While there is no evidence of the number of children visiting that department, it is clear that children under the age of six years were invited to go there and that the defendant storekeeper should have expected their presence. Children of such an age ordinarily could not appreciate the danger of putting their fingers in or around moving machinery, but would be attracted by it, especially if it were bright, and would be likely to investigate with their fingers anything to which they were attracted.

"A child of immature years is expected to exercise only such care as pertains to childhood, and all persons dealing

with such a child are chargeable with such knowledge. As a result, one dealing with children is bound to exercise a greater amount of caution than he would were he dealing with an adult.'' (*Hernandez* v. *Murphy*, (1941) 46 Cal.App. 2d 201, 208 [115 P.2d 565].) Substantially the same rule ·was declared in *Shannon* v. *Central-Gaither U. School Dist.*, (1933) 133 Cal.App. 124, 129 [23 P.2d 769]; *Brizzolari* v. *Market St. Ry. Co.*, (1935) 7 Cal.App.2d 246, 248 [46 P.2d 783]; and *Harrison* v. *Gamatero*, (1942) 52 Cal.App.2d 178, 183-184 [125 P.2d 904]. In the Shannon case the court quoted with approval from 45 C.J. 702 the following: ''. . . the fact that children cannot and do not ordinarily exercise the same degree of prudence and care for their own safety as adults imposes upon those by whose acts or omissions a child may be injured an obligation of exercising more vigilance and caution than might be sufficient with respect to an adult, and conduct which might reach the standard of ordinary care with respect to an adult might, in the case of a child, amount to negligence or even gross negligence.'' In *Brizzolari* v. *Market St. Ry. Co.*, *supra*, the court stated the rule by quoting this passage from 19 Cal.Jur. 623: ''As has been seen, a child of immature years is expected to exercise only such care and self-restraint as pertains to childhood. A reasonable person is expected to know this and to govern his actions accordingly, so that when a child liable to be injured cannot be expected to exercise the usual *quantum* of care, a greater amount of caution is necessary on the part of the one whose act might cause injury.'' This rule was applied to a variety of circumstances in the cases just cited. It is a general rule applicable in any case where negligence toward children is involved and must be given full effect as between the operator of a business and children whom he invites to come upon his premises for business reasons. (45 C.J. 838.)

This matter has been considered in several cases from other jurisdictions, in which not only were escalators in stores involved, but the facts were that small children had gotten their fingers caught in them, and it has been held that the proprietors of the stores might be held liable for negligence in not anticipating and guarding against such accidents, and that the question whether their failure in that respect did constitute negligence was one of fact for the jury. (*Hillerbrand* v. *May Mercantile Co.*, (1909) 141 Mo.App. 122 [121

184

S.W. 326, 328]; *Graves* v. *May Dept. Stores Co.*, (Mo.App. 1941) 153 S.W.2d 778, 783; *Jablonski* v. *May Dept. Stores Co.*, (Mo.App. 1941) 153 S.W.2d 786; *Reynolds* v. *May Dept. Stores Co.*, (C.C.A. April 8, 1942) 127 F.2d 396; *Burdine's, Inc.* v. *McConnell*, (1941) 146 Fla. 512 [1 So.2d 462].) In *Hillerbrand* v. *May Mercantile Co.*, *supra*, the court said: "Proprietors of premises who invite children on them must use care to keep them reasonably safe, not omitting precautions against injury from childish impulses. . . . This doctrine is but one phase of the wider doctrine that an owner must keep his premises reasonably safe for the use of people whom he invites to come on them—an application of the general doctrine with special references to the nature of children, and in accordance with the principle that what constitutes due care in a given instance depends on the degree of danger to be apprehended. [Citing cases.] Because children are more heedless and have less discretion and capacity to avoid danger than adults, more care must be exercised by others for their safety." Part of this language was quoted with approval in *Graves* v. *May Dept. Stores, Co.*, *supra*, where the court further said: "We think the evidence in the case at bar was sufficient to warrant the jury in saying that the moving escalator was such an instrumentality as was likely to attract a small child's curiosity and likely to cause it to put its hand upon the moving step at the point where the opening was located and justified a finding that it presented a condition of such a dangerous nature to children of tender age that a reasonably prudent person, exercising ordinary care, would have anticipated such danger to a child and guarded against it." The evidence there was not substantially different from that here, except that the injured child there was only 2½ years old. It was also held, we think correctly, in *Hillerbrand* v. *May Mercantile Co.*, *supra*, and *Graves* v. *May Dept. Stores Co.*, *supra*, that the fact that there was no evidence of previous similar accidents did not prevent the finding of negligence, the statement being made in the Hillerbrand case and repeated in the Graves case that ". . . . the jury might say from their knowledge of the instincts of childhood that the construction and movement of the machinery was likely to excite a small child's curiosity, and allure it into thrusting its hand into the box. . . ."

The defendants insist, especially in their argument on rehearing, that a decision against them on this point is an application of the rule of the so-called "attractive nui-

sance'' cases, that some of the conditions necessary to the application of that rule were not shown, that plaintiff's counsel conceded in the trial court that this is not an ''attractive nuisance'' case, that the case was tried on the theory that it is not such a case, and that this theory cannot be abandoned on appeal and a recovery sought on some theory not presented to the trial court. It is true plaintiff's counsel did make the concession as claimed, but he has not at any time argued on appeal that this is an ''attractive nuisance'' case. We do not base our decision on the rule of those cases, for this is plainly not such a case. That rule has grown up as an exception to the rule that a landowner has no duty toward trespassers except to abstain from wilful or wanton injury. Here the plaintiff was not a trespasser, and there is no need to invoke a rule whose purpose is merely to relax some of the rigors of the ancient rule of non-liability to trespassers. ■ The rule here applicable is that requiring ordinary care to make the premises safe for invitees, as qualified by the further rule that where the invitees are children special caution is necessary. But this rule exacts of the one who invites children upon his premises no less caution than must be exercised by the landowner who knows trepassing children are in the habit of playing around his ''attractive nuisance.'' The former must be held to the necessity of taking whatever precautions ordinary care would dictate to protect the invited children from any instrumentality he maintains upon his premises which is likely to attract them and subject them to dangers which a reasonably prudent person would anticipate. The facts from which the defendant storekeeper here might be held liable on this view of the law were presented to the jury and we find nothing in the record to suggest that the case was tried on the theory that there was no such liability.

■ We do not intend, by what we have just said, to declare that negligence of defendant corporation here was established as a matter of law, or that a verdict for it would have been without support in the evidence. But upon the evidence questions of fact arose for the jury, which should have been allowed to determine whether the escalator was of the class of objects naturally attractive to children, whether defendant corporation should in the exercise of ordinary care have known that it was of that class and anticipated accidents such as that which happened to plaintiff, and if so, whether ordinary care required the stationing of guards at the escalator or

other precautions to prevent such accidents. Upon these issues findings in favor of plaintiff would have been supported and would have required judgment in his favor against the defendant corporation.

█ The foregoing conclusions do not apply to defendant Goddard. He did not install or maintain the escalator and was not in charge of its operation. He was merely the floor manager in charge of the department of the store where plaintiff was injured. He had been instructed how to stop and start the escalator, in case accidents should happen, but is not shown to have had any other responsibility regarding it. He cannot be held liable to plaintiff on any of the grounds above suggested. Plaintiff contends, however, that other grounds of liability exist as to him, growing out of his conduct after the accident happened.

█ This contention is based on the testimony of plaintiff's mother that plaintiff was kneeling down facing toward the escalator with his hand caught in it, that Goddard, when he came up, stopped the escalator, took hold of plaintiff's wrist and tried for "about two minutes . . . a little while" to extract the hand, that failing in this effort, Goddard reversed the escalator and "then Takashi's finger came out with the blood shooting out," that before the escalator was reversed there was no blood visible on plaintiff's hand, and the blood appeared "just when the escalator was reversed." From this plaintiff seeks to draw the conclusions that the reversal of the escalator was the cause of the loss of parts of his fingers and that Goddard was negligent in reversing the escalator instead of calling mechanics, who were somewhere about the building, to remove the comb plate, an operation which would take 15 or 20 minutes after the mechanics arrived. In addition to the facts thus relied on by plaintiff, the mother's testimony also shows that the back of plaintiff's hand was injured "quite a bit . . . torn and blistered like." These facts do not justify the inferences suggested by plaintiff. From the fact that the back of the hand received the injuries above stated—injuries which were impossible unless the back of the hand were drawn in between comb plate and step—it is clear that the fingers were not visible when plaintiff's mother looked at the hand before the escalator was reversed. Hence her failure to see blood affords no basis for an inference that the fingers were not then bleeding. It is easy to understand how the forward movement of the steps

pulling on the fingers when the hand was caught in the escalator might inflict the injuries suffered by the fingers; but it is not so clear how the backward movement of the steps, freeing the fingers from detention, could have produced that result. We have no information regarding the internal construction of the escalator to aid us in reaching the conclusion that it did so. Any such conclusion must be based on pure conjecture, which is not a basis on which a verdict may be founded.

Moreover, Goddard knew that it would take 15 or 20 minutes to remove the comb plate and thus free plaintiff's hand, after the mechanics arrived, in addition to the time necessary to get them there. He had discovered that the hand could not be released by such efforts as he could make with the escalator stopped. Plaintiff was already crying with the pain of his injuries. Goddard's conclusion that a reversal of the escalator would at once free the hand was a reasonable one, under the circumstances, and was proved correct by the event. It is not shown that anything apparent to him should have caused him to know, or even to suspect, that reversal of the escalator would result in the cutting off of plaintiff's fingers or otherwise increase the injuries he had obviously suffered already. If Goddard decided, as apparently he did, that it was better to free plaintiff's hand at once than to keep him in a strained and necessarily painful position for a period of time which might considerably exceed 15 or 20 minutes, we see no reasonable ground on which a jury could have found that his action in that respect, done under the stress of a sudden emergency, was negligent, even if we assume that, in fact, the reversal of the escalator did aggravate plaintiff's injuries.

██ Plaintiff also contends that the doctrine of res ipsa loquitur is applicable here and that under it an inference of negligence on the part of both defendants may be supported without anything more than appears in the record. That doctrine is clearly not applicable in support of plaintiff's case against defendant Goddard. One of its fundamental elements is that the thing causing the injury be under the management and control of the defendant. (19 Cal.Jur. 704, 708.) No such condition existed as to Goddard. ██ The doctrine is likewise not applicable to defendant corporation, but for other reasons. "The reason for the rule is that ordinarily the one injured is not in a position to know more than

that, by some unusual movement of the instrumentality, he was injured, whereas the one who operates the instrumentality should know and be able to explain the precise cause of the accident.'' (19 Cal.Jur. 705-707; *Alexander* v. *Wong Yick,* (1938) 25 Cal.App.2d 265, 269 [77 P.2d 476].) ''If the evidence affirmatively shows the operator or manager of the instrumentality by means of which the injuries are inflicted has no superior knowledge or by the exercise of reasonable care is unable to secure information regarding the cause of the accident, or the evidence establishes the fact that the complainant possesses all the knowledge or information thereof which is reasonably accessible to the operator of the machine, then the doctrine of *res ipsa loquitur* has no application.'' (*Johnson* v. *Ostrom,* (1932) 128 Cal.App. 38, 43 [16 P.2d 794] ; *Alexander* v. *Wong Yick, supra,* and cases therein cited; *Jorgensen* v. *East Bay Transit Co.,* (1941) 46 Cal.App.2d 189, 193 [115 P.2d 556].) ''. . . . when the cause is established by either party to the action the doctrine is not then applicable.'' (*Manuel* v. *Pac. Gas & Elec. Co.,* (1933) 134 Cal.App. 512, 517 [25 P.2d 509].) Here the evidence clearly establishes the immediate cause of the plaintiff's accident. It resulted from the facts that the escalator was in operation and that it was so constructed that there was an opening in which plaintiff's fingers could get caught. It did not result from anything about the operation of the escalator, such as the sudden jars or jolts which the operators of moving vehicles have been required, under this doctrine, to explain. Whether defendant corporation was to be held liable for the injuries thus caused depended on the consideration of matters which were as open to investigation by one party as by the other. Since we hold that an inference of the corporation's negligence was possible without the application of this rule, this point is perhaps not of importance to the present decision; but we determine it for the purpose of a new trial, to guide the trial court in its instructions to the jury, or its own consideration of the case if there is no jury.

Defendants contend that plaintiff's mother was guilty of contributory negligence in failing to keep proper watch over plaintiff and to prevent him from getting caught in the escalator. As defendants concede, such negligence would not bar plaintiff Takashi's action for his own injuries (*Zarzana* v. *Neve Drug Co.,* (1919) 180 Cal. 32, 37 [179 P. 203, 15 A.LR. 401]), and it was not pleaded as a defense thereto; but defendants argue that any recovery by plaintiff Tsutomu

would be community property of himself and his wife, the mother of the other plaintiff, and hence her contributory negligence would constitute a defense to Tsutomu's action. It is true that negligence of the wife, if any, in caring for the children of herself and her husband is imputable to the husband and is a defense to any action brought by him in behalf of the community to recover for injuries to the children, to which such negligence contributed. (*Dull* v. *Atchison T. & S. F. Ry. Co.*, (1938) 27 Cal.App.2d 473, 479 [81 P.2d 158].) But from the evidence it appears that the wife took some precautions by way of watching over and caring for the son, and we cannot say, as a matter of law, that they were not sufficient. The question was one for the jury. (See *Healy* v. *Market St. Ry. Co.*, (1940) 41 Cal.App.2d 733, 738 [107 P.2d 488]; *Carrisosa* v. *Southern Service Co.*, (1932) 128 Cal.App. 160, 163-165 [16 P.2d 1032].)

The judgment in favor of defendant Goddard is affirmed. The judgment in favor of defendant May Department Stores is reversed and the cause is remanded for a new trial as to that defendant.

Shinn, Acting P. J., and Wood (Parker), J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied October 6, 1943.