[Civ. No. 3985.   Fourth Dist.   Aug. 29, 1950.]

JOEL BLODGETT, a Minor, etc., et al., Appellants, v. WALKER SCOTT CORPORATION, Respondent.

F. W. Powell and Thomas P. Golden for Appellants.

Gray, Cary, Ames & Driscoll for Respondent.

BARNARD, P. J.—The minor plaintiff, being two months less than 11 years old, was injured while riding on an escalator between the first and second floors of a store operated by the defendant. This escalator had a banister on each side, 11 inches in width at the top, which was stationary except for a moving handrail along the middle. Near the outer edge of the banister, and at the "apex" or angle where it passed through the ceiling, there was a triangular guard plate which was about 18½ inches from the nearest edge of the tread of the escalator upon which people stood.

Shortly before the accident the boy, with his parents, had gone to the second floor on this escalator. On their return to the first floor the boy asked and received his mother's permission to ride up again. The parent stood a few feet from the bottom and watched him until he was about halfway up, and then looked elsewhere. While he was leaning across the banister and looking down his head came in contact with the guard plate at the "apex," causing the injuries complained of. The escalator was stopped and the boy ran down past the other occupants to where his parents stood.

The complaint alleged that this escalator was so negligently "maintained and operated" by the defendant as "to be wholly unfit and dangerous for public use." After a trial without a jury, and an inspection of the premises by agreement of the parties, the court found that it was not true: that the defendant maintained or operated this escalator carelessly or negligently; that it was unfit or dangerous for public use; that the defendant had, or should have had, knowledge of any dangerous or unfit condition; or that any act of negligence on its part was the proximate cause of the accident. The plaintiffs have appealed from a judgment in favor of the defendant.

Claiming insufficiency of the evidence, it is argued that there was no guard plate at the "apex"; that an elevator starter, who was the only attendant, saw and realized the boy's dangerous position, but did not warn him or stop the escalator; that instead of doing her duty she asked the maintenance supervisor to stop it; that the court's refusal to grant a nonsuit discloses a prima facie case, which was not overcome by respondent's evidence; that the testimony of a state inspector related only to a minimum standard, while a higher degree of care was here required; that the testimony that the boy leaned over the banister related only to his conduct, and not to the issue as to respondent's negligence, and that the

fact that the trial judge viewed the escalator in operation is of no weight since the boy was not then present.

These contentions are not sustained by the record. While the boy's mother testified that she did not see the triangular guard plate, several witnesses testified that it was there at the time. The elevator starter testified that she was standing near the escalator and saw the boy leaning over the railing; that she had seen other children leaning over, but not that far; that the moving handrail was opposite the middle of his chest and the rest of his body extended beyond the rail; that she yelled to the maintenance supervisor who was nearer the escalator than she was; that he "made a dive for the button," and stopped it; and that before it stopped the boy's head hit the triangular guard. The maintenance supervisor testified that when the elevator starter called his attention he saw the boy "leaning over," and "riding on the rail, almost on to his stomach"; that he "hollered" at the boy and immediately "slipped over to the button" and stopped the escalator. The state inspector's testimony that this escalator complied with all applicable safety regulations, while it may not be conclusive, is entitled to some weight. Moreover, he testified that this installation was of equal standard with the best, that the condition at the "apex" conformed to accepted standards, and that it was practically the same design as that used in all escalators.

The fact that a nonsuit was denied is immaterial since different rules apply when the judge is to weigh the evidence. Both parties expressed a desire to have the judge inspect the escalator, and stipulated that he might do so alone. This was for the obvious purpose of having him observe the actual situation, and there is no merit in the contention here made in this regard.

The question was one of fact for the trial court (*Kataoka* v. *May Dept. Stores Co.*, 60 Cal.App.2d 177 [140 P.2d 467]; *Reynolds* v. *May Dept. Stores Co.*, 127 F.2d 396), and the evidence supports the findings made. The situation here was summarized by the trial judge, in making his decision: "It seems to me plain, as a physical fact, that the only way this accident could have happened is by the child leaning so far that his body was lying on the handrail," and "I cannot see that the weight of the evidence would justify a finding that the proprietors were bound to anticipate an action of that sort."

The appellants further contend that the operator of an escalator is bound by the same degree of care as that required of a common carrier; that in such cases even more care is required when the passenger is a child; and that these principles should logically be so extended as to hold operators of escalators, elevators or common carriers "responsible as insurers for the safety of child passengers." Aside from other considerations, the facts here raise a doubt as to the advisability of such an extension of the existing rules.

The judgment is affirmed.

Griffin, J., and Mussell, J., concurred.

A petition for a rehearing was denied September 15, 1950, and appellants' petition for a hearing by the Supreme Court was denied October 26, 1950.