514 So.2d 439 (1987)
Michael BROWN, Individually and as Natural Tutor of the Minor Child, Marcus Brown
v.
SEARS, ROEBUCK AND COMPANY and Westinghouse Electric Corporation.
Nos. 87-C-0726, 87-C-0732.
Supreme Court of Louisiana.
October 19, 1987.
*440 Allen L. Smith, Jr., Plauche, Smith & Nieset, Lake Charles, for Sears Roebuck, et al.
Robert Diggs, Domengeaux & Wright, John McElligott, Jr., Davidson, Meaux, Sonnier & McElligott, Lafayette, for the Browns.
WATSON, Justice.
In this escalator case, twenty-two month old Marcus Brown injured his left little finger when it was caught in the space between the moving treads and the left side panel. The trial court granted a directed verdict on liability at the conclusion of the evidence and the jury awarded the medical expenses of $4,163.47 and $1,500 in general damages.
Sears, Roebuck and Company, the custodial store, and Westinghouse Electric Corporation, the manufacturer of the escalator,[1] appealed on the issue of liability and plaintiff appealed the award of general damages, contending that $1,500 was too low. Relying on Halphen v. Johns-Manville Sales Corp.,[2] the court of appeal decided that escalators fall into the category of products which are unreasonably dangerous per se. Since Marcus Brown was legally incapable of fault and his mother, Jolene Brown, was held free from negligence, there was no victim or third party fault. Finding the award of general damages to be unreasonably low, the court of appeal increased it to $3,000 and the judgment, as amended, was affirmed.[3] A writ was granted because of the directed verdict in the trial court and the court of appeal's statement that an escalator is unreasonably dangerous per se.[4]

FACTS
On June 22, 1982, Jolene Brown stepped on an ascending escalator with her son Marcus, putting his left hand on the left rail, holding Marcus' right hand with her left hand, and placing her right hand on the rail. Both were on the same step.
In Jolene's opinion, the greatest danger in riding an escalator came when getting on and getting off, and she was looking ahead to the point where they were to step off at the escalator's top comb plate. She did not feel Marcus release the left handrail, and he stood up straight holding her hand throughout the ride. When Marcus screamed, she looked and saw blood shooting from his left little finger. He had apparently let go of the handrail, obviously disproportionate to his size,[5] and his hand had been caught in the side gap. Jolene's cousin, Sapha Marie Charles, was riding the escalator two steps behind the Browns. She confirmed that the child held his mother's hand throughout the ride.
Defendants strongly rely on the allegation that Marcus Brown poked his little finger into the side space and thus misused the escalator because of inadequate supervision.[6] This might have happened but *441 there is no evidence that it did.[7] His mother did not see what happened. Her cousin, Sapha, said "... some kind of way he got his finger caught...."[8] Asked: "Did you ever see this child bend over and stick his hand down in anything?", Sapha replied, "No."[9] Even if defendants were correct, the exploring fingers of small children are a normal and foreseeable event.[10]
The escalator had pictograms showing a woman riding the escalator with one hand on the handrail and the other holding her child's hand. Circles indicate zones of danger at the bottom where the sides and the treads intersect. The sign says "caution, hold handrail, attend children, avoid sides." These signs, installed by Westinghouse, were required by the ANSI Code.[11] There is a dispute about two other signs which plaintiff and her cousin testified were not present on the day of the accident, but the store manager said were customarily posted. However, these merely say, in pertinent part, "caution, attend children" and add little except size and prominence. They caution against bare feet and advise that an elevator is available in the appliance department.[12]
The store manager admitted that he had been personally involved with one other accident on this particular escalator and had heard of "others".[13] The state-of-the-art escalator was inspected regularly by Westinghouse. The gap on each side of the treads was no more than three-sixteenths of an inch, the maximum allowed by ANSI standards. The side skirts were kept lubricated to reduce friction. A Westinghouse expert, Jerry Dwight Mowdy, assumed that young children would ride on the escalator, both alone and accompanied, and also would play on the escalator.
The tendon in Marcus Brown's left little finger was cut and retracted into the palm. There was also neurovascular damage to the finger. The tendon was sutured back into place under general anesthesia. Marcus underwent physical therapy and remained under a doctor's care for approximately six months, resulting in an exaggerated fear of physicians. According to Dr. Terry Cromwell, an expert in plastic and *442 reconstructive hand surgery who testified in video deposition, the tendon repair had been disrupted or adhesions had developed one year after the accident. The last joint of the injured finger was immobile, giving Marcus a forty-five percent impairment of his left little finger, but only two percent of his hand. According to Dr. Cromwell, most young children, like Marcus, adapt well to such minor disabilities.

LAW
In Hunt v. City Stores, Inc., 387 So.2d 585 (La.,1980) the space at the side of a store's moving escalator tended to trap small tennis shoes, in part because the friction of the treads softened the rubber of the shoes. Therefore, the escalator "posed a threat to small children in tennis shoes. City Stores was aware of the danger and had a duty to warn of the risk of injury. It failed to do so. The store was at fault in not guarding the public against the risk of harm posed by the escalator."[14]Hunt followed Marquez v. City Stores Co., 371 So.2d 810 (La.,1979), the seminal Louisiana case on escalator liability in regard to small children.
Hunt held that a state of the art escalator with a propensity for entrapping small tennis shoes, which had no warning, created an unreasonable risk of injury to children wearing tennis shoes, making both the custodial store and the manufacturer solidarily liable. Hunt did not hold that escalators are unreasonably dangerous as a matter of law.
Although Halphen, supra, used the phrase "unreasonably dangerous per se",[15] and cited Hunt, this statement must be considered in the context of Halphen which was answering a certified question about the liability of a manufacturer which did not know and could not have reasonably known of the inherent danger in its product. Halphen concluded that manufacturers are liable for things termed unreasonably dangerous per se regardless of knowledge.
In Hunt, there was no question that the manufacturer and the store had knowledge of the danger presented by the escalator to small children in tennis shoes, and therefore had a duty to warn which was breached. Knowledge was not an issue in Hunt.[16] However, Hunt's citation in Halphen apparently misled the court of appeal. What Halphen meant in citing Hunt was that a product is unreasonably dangerous where its danger outweighs its utility, regardless of whether the danger is foreseeable.
Many of the escalator cases share a common element with this one, previous injuries. See Marquez, supra; Hunt, supra; Montgomery Elevator v. McCullough, 676 S.W.2d 776 (Ky., 1984), a tennis shoe case; and Peffer v. G.C. Murphy Co., 73 Dauph.Co. 202, 17 Pa.D. & C.2d 595 (1959). Such evidence makes the existence of a design defect more probable. Montgomery, supra.
A review of cases from other jurisdictions reveals that a multitude of children have been injured on escalators. See, for example, Collesides v. Westinghouse Elec. Corp., 125 Misc.2d, 413, 479 N.Y.S.2d 475 (1984) where an infant's finger was ripped from her hand. In Gilliam v. J.C. Penney Company, 341 F.2d 457 (7 Cir.,1965), the flesh of a three year old's left arm was caught between an escalator's riser and its side-wall. A six year old boy mutilated his hand by sticking his finger between a handrail and its guard in Estabrook v. J.C. Penney Company, 105 Ariz. 302, 464 P.2d *443 325 (1970). An infant's hand was caught between an escalator's step and its bottom plate in Butterman v. R.H. Macy & Company, 305 N.Y.S.2d 861, 33 A.D.2d 746 (1969). Also see Connelly v. Kaufmann & Baer, Inc., 349 Pa. 261, 37 A.2d 125 (1944); J.C. Penney Company v. Eubanks, 294 F.2d 519 (10 Cir.,1961), another side panel tennis shoe case; and Nettrour v. J.C. Penney Company, 146 Col. 150, 360 P.2d 964 (1961),[17] another side wall finger case. In Otis Elevator Company v. Wood, 436 S.W.2d 324 (Tex.,1968) an elderly female store employee was injured by an escalator when she assisted a small child.
Jolene Brown was correct in regarding the comb plates at the top and bottom of the escalator as zones of danger. The top plate was the source of the injury in Collesides, supra; in Connelly, supra, the bottom comb caused the amputation of a three year old boy's middle finger; in Takashi Kataoka v. May Dept. Stores Co., 60 Cal. App.2d 177, 140 P.2d 467 (1943), a four year old had his hand caught in the comb plate. See Reynolds v. May Department Stores Co., 127 F.2d 396 (8 Cir.,1942), latter app. 140 F.2d 799 (8 Cir., 1944), cert. den. 317 U.S. 639, 63 S.Ct. 31, 87 L.Ed. 515; Peffer, supra, where a four year old boy's hand was caught in the top comb plate; Pisano v. S. Klein on the Square, 78 N.J. Super. 375, 188 A.2d 622, cert. dismissed 40 N.J. 220, 191 A.2d 61 (1963), where a five year old child's hand was caught under the comb plate; Turk v. H.C. Prange Co., 18 Wisc.2d 547, 119 N.W.2d 365 (1963); and Gilbert v. Korvette, Inc., 223 Pa.Super. 359, 299 A.2d 356 (1972), aff'd 457 P. 602, 327 A.2d 94 (1974), where a three year old boy's foot was pulled into the comb plate. Also see, Graves v. May Department Stores Co., 153 S.W.2d 778 (Mo., 1941); Burdine's, Inc. v. McConnell, 146 Fla. 512, 1 So.2d 462 (1941); and Jablonski v. May Department Stores Co., 153 S.W.2d 786 (Mo.App.,1941).
Courts have assigned various legal bases for finding liability in escalator cases, among them: classification as a common carrier; res ipsa loquitur; the special care required for small children; and strict liability. Escalators in department stores are often characterized as common carriers. Peffer, supra; Vandagriff v. J.C. Penney Company, 39 Cal.Rpt. 671, 228 Cal.App.2d 579 (1964); Hendershott v. Macy's, 158 Cal. App.2d 324, 322 P.2d 596 (1958);[18]Simmons v. F.W. Woolworth Company, 163 Cal.App.2d 709, 329 P.2d 999 (1958); Weiner v. May Department Stores Co., 35 F.Supp. 895 (1940); Petrie v. Kaufmann & Baer Co., 291 Pa. 211, 139 A. 878 (1927). This imposes a duty of utmost care and diligence.
Some courts have imposed liability on escalator manufacturers and operators by applying res ipsa loquitur, a rationale analagous to that in Marquez and Shapiro where the injuries were found to be unusual occurrences which would not have happened if the escalators had not been defective.
In Gilbert v. Korvette, Inc., supra, the court concluded that the accident would not have occurred in the absence of negligence and applied the res ipsa loquitur rule of the Restatement (Second) of Torts (1965) in Section 328D.[19] Other res ipsa loquitur or presumption of negligence escalator cases *444 are Vandagriff, supra, where an eight year old boy's finger was amputated; May Dept. Stores Co. v. Bell, 61 F.2d 830 (8 Cir.,1932); J.C. Penney v. Eubanks, 294 F.2d 519 (10 Cir.,1961); Sanone v. J.C. Penney Company, 17 Utah 2d 46, 404 P.2d 248 (1965); Petrie, supra; Hesemann v. May Dept. Stores Co., 225 Mo.App. 584, 39 S.W.2d 797 (1931); Pisano, supra; and Turk, supra. Res ipsa loquitur was also applied in J.C. Penney Co. v. Livingston, 271 S.W.2d 906 (Ky.,1954), a case similar to this one in that the injured child was twenty-two months old and was holding his sister's hand when his other hand was caught in the escalator's step.
Many cases emphasize the special care that must be accorded to children because of their curiosity, inability to appreciate danger, and childish propensity to meddle. See Kline v. J.C. Penney Co., 153 Cal. App.2d 717, 314 P.2d 989 (1957); Nettrour, supra; Hecht Co. v. Jacobsen, 86 D.C.App. 81, 180 F.2d 13 (1950); Burdine's, supra; Graves, supra; Hillerbrand v. May Mercantile Co., 141 Mo.App. 122, 121 S.W. 326 (1909); Takashi Kataoka, supra; Peffer, supra.
If escalators are unsafe for children, store owners should warn against children using them. Reynolds, supra; Nettrour, supra; Marquez, supra; J.C. Penney Co. v. Livingston, supra; Burdine's supra; Graves, supra; Jablonski, supra. The pictograph here was an invitation for a child to accompany an adult on the escalator and implied that the escalator was reasonably safe for children.
When a product's defect causes injury in normal use, Louisiana imposes strict tort liability on the manufacturer of the defective product if the injury might reasonably have been anticipated. Bloxom v. Bloxom, 512 So.2d 839 (La., 1987); Weber v. Fidelity & Casualty Insurance Co. of N.Y., 259 La. 599, 250 So.2d 754 (1971).
A defect may be inferred from the circumstances of the accident. Marquez, supra; Shapiro, supra. Under LSA-C.C. art. 2317,[20] as interpreted in Loescher v. Parr, 324 So.2d 441 (La.,1975), both the manufacturer and the custodian of an unreasonably dangerous, i.e., defective thing, are strictly liable in solido for any resulting injuries. Marquez, supra; Hunt, supra.

CONCLUSION
Unquestionably utilitarian, preferred by store owners because of the vistas afforded shoppers, escalators are entrenched in the department stores of the United States. It is common knowledge that escalators are prominently located and elevators are generally less accessible in these stores. While riding escalators, most parents exercise "caution" and "attend children". Many who have recovered in reported cases were less cautious and attentive than Jolene Brown, who held her child firmly by the hand. See Burdine's, supra; Hecht, supra; Kline, supra; and Shapiro, supra. Nonetheless, the injury occurred. Caution and attention are insufficient. Marcus Brown was injured while he and his mother were using the escalator in a normal, even prudent, manner.
If the dangers are unavoidable,[21] one is compelled to the question posed in Reynolds, supra: should infants be allowed to ride on escalators? The inescapable conclusion is that escalators, for all their utility, are unreasonably dangerous to small children. If escalators cannot be made reasonably safe for escorted children, children should be warned against riding them. Stores and manufacturers who do not warn against children riding escalators are strictly liable for any resulting injuries. Bloxom, supra; Hunt, supra. Signs were posted but they did not adequately warn users with small children of the particular danger *445 which led to this accident. The court of appeal correctly found that there was no victim or third party fault. Although not unreasonably dangerous "per se", escalators are unreasonably dangerous to small children, making their manufacturers and custodians strictly liable for escalator injuries to those children. LSA-C.C. art. 2317. There is no question that the injury here was foreseeable, which would also make the manufacturer liable under Weber, supra.
Since there is minimal permanent disability, there is no error in the quantum of general damages fixed by the court of appeal.
The trial court did not err in directing a verdict on liability in favor of plaintiff after all evidence was heard.
For the foregoing reasons, the judgment of the court of appeal is affirmed.
AFFIRMED.
CALOGERO and COLE, JJ., concur and assign reasons.
MARCUS, J., dissents and assigns reasons.
LEMMON, J., dissents.
CALOGERO, Justice, concurring.
We granted writs in this case to consider the overbroad statement by the court of appeal that escalators are unreasonably dangerous "per se." I agree with the majority's conclusion that our opinion in Halphen v. Johns-Manville Sales Corp., 484 So.2d 110 (La.1986) does not require the result reached by the court of appeal, and that escalators should not be classified as products which are unreasonably dangerous "per se."
I also concur in the result reached by the majority opinion. However, I am less than certain of the rationale relied on by that opinion for upholding the directed verdict on the issue of liability which was entered adversely to the manufacturer and store owner. I believe that the defendants are liable in this case because of their failure to adequately warn that children riding the escalator were particularly susceptible to serious injury, absent the exercise of extreme caution. Because there were no warnings in place which conveyed this essential message, I believe that the escalator was unreasonably dangerous under the circumstances of this case, and within the framework provided by Halphen, because the defendants failed to adequately warn of a danger to children inherent in the normal use of the product. Halphen, 484 So.2d at 114-15.
COLE, Justice, concurring.
I agree that under the facts of this case, the escalator posed an unreasonable risk of harm to the child and therefore the manufacturer and custodian are strictly liable for the resulting injury. I write separately, however, to express my concern about some of the broad pronouncements in the opinion.
The majority opinion states that "stores and manufacturers who do not warn against children riding escalators are strictly liable for any resulting injuries." (emphasis added). The majority opinion further states that "escalators are unreasonably dangerous to small children, making their manufacturer and custodians strictly liable for escalator injuries to those children." The implication from these statements is that escalators are unreasonably dangerous "per se" to small children.
While I agree with the majority's holding that escalators are not unreasonably dangerous "per se," I cannot agree with the proposition that escalators pose such a danger to young children that manufacturers and custodians must provide warnings that children are not allowed on the escalator or face strict liability for any injury that may befall a young child on the escalator. Such a determination of liability must be made on a case by case basis. Once a court finds that a given product is not unreasonably dangerous "per se," as the majority purports to have found, the question then becomes whether, under all of the circumstances of the particular case, the product in question posed an unreasonable risk of injury to the plaintiff. Because I find that under the circumstances of this case, the *446 escalator did pose an unreasonable risk of injury to Marcus Brown, I concur in the result reached in this case.
MARCUS, Justice (dissenting).
I disagree with the majority's statement that the pictograph was an invitation for a child to accompany an adult on the escalator and implied that the escalator was reasonably safe for children. To the contrary, the pictograph warned riders that they should use "caution," "avoid sides" and that parents should "attend children." The pictograph also had red danger circles around the air spaces. I consider that the pictograph adequately warned users with small children of the particular danger which led to this accident. Accordingly, I respectfully dissent.
NOTES
[1] It was stipulated that Westinghouse also maintained the escalator.
[2] 484 So.2d 110 (La.,1986).
[3] Brown v. Sears Roebuck & Co., 503 So.2d 1122 (La.App. 3 Cir. 1987).
[4] 506 So.2d 105 (La., 1987).
[5] See Reynolds v. May, infra, where the court noted that handrails suitable for adults were too high for a four year old, and the treads came nearly to his knees.
[6] "The Third Circuit now declares that Halphen, Marquez and Hunt require the same imposition of liability even though Marcus Brown unobserved by his mother, reached over and stuck his finger in the air space between the moving tread and the sidewall. Thus, liability progresses from an unintended grasping of tennis shoes, to the volitional act of a toddler, ..." Original Brief on behalf of Westinghouse Elevator Corporation, at page 12.

"The Third Circuit further failed to distinguish Marquez and Hunt in that both cases found that the escalator was in `normal use for the intended purpose' by the plaintiff at the time of the injury. Marquez, at 813; Hunt, at 587. The plaintiffs in those cases, however, were simply riding the escalator. No misuse was shown at trial. Escalators necessarily come into contact with feet. Marcus Brown, however placed his finger into the airspace. Certainly this was not the intended use of the product. At the very least, the question of `normal use' was one for the jury. * * *" Original Brief on Behalf of Appellants/Defendants Sears, Roebuck & Company.
"In the instant case, the injured child was not merely using the escalator for its intended purpose. It is undisputed that Marcus Brown `suddenly stooped down and placed his little finger of his left hand into the air space separating the moving tread from the left side wall of the escalator, causing a severe laceration of his little finger.' Brown, supra, at 1124. Thus, Marcus Brown's intentional act was a direct cause of his injury, a factor whose absence was expressly noted by this court in the Hunt and Marquez decisions." Brief of Amicus Curiae National Elevator Industry, Inc. in support of the appeals of Westinghouse Elevator Corporation and Sears, Roebuck & Company, at page 3.
[7] The court of appeal erred in saying: "... During the escalator's ascent to the second floor, Marcus suddenly stooped down and placed the little finger of his left hand into the air space separating the moving tread from the left sidewall of the escalator, causing a severe laceration of his little finger...." 503 So.2d 1122 at 1124. The evidence does not bear out the claim that Marcus "poked" or "placed" his finger in the air space.
[8] Tr. 206.
[9] Tr. 209.
[10] In answer to a leading question by astute counsel for Westinghouse: "What you're telling is you figure that he had to reach down some kind of way and stick his finger down in something that would cut it?", Jolene Brown, who had testified she did not see what happened, answered: "Yes, sir." (Tr. 190)
[11] American National Standards Institute.
[12] Bare hands, like bare feet, bare arms, and tennis shoes, would tend to be drawn from the treads into the gap at the sides. See Hunt, infra; Montgomery, infra; Gillam, infra. Here, there was testimony that a four year old child had her bare foot cut while standing by the sidewall of the same escalator. The trial court refused to allow the evidence because it was not established that the cut resulted from the clearance at the side of the escalator. In Gilliam, infra, the accident was described as follows: "... The skin of the boy's forearm just above the left wrist touched the aluminum skirt or side at the junction of the nose or edge of the step and the upright side of the skirt. This pushed the skin into a narrow space, forcing the skin against the skirt which caused greater friction and held the arm. The space opened up and the step rolled over the arm until the arm was down in the space between the end of the step and the skirt up to approximately the boy's elbow." 341 F.2d 457 at 459.
[13] Tr. 225.
[14] 387 So.2d 585 at 588.
[15] 484 So.2d 110 at 114.
[16] "In Hunt v. City Stores, Inc., the Louisiana Supreme Court held an escalator manufacturer liable because its product was found to be unreasonably dangerous to normal use. The court imposed liability after finding that, because the `likelihood and gravity of harm outweigh[ed] the benefits and utility of the manufactured product, the product ... [was] unreasonably dangerous.' This test is different from the one in Halphen because the Hunt test does not consider whether liability would still be imposed if the risk was unforeseeable. In Hunt, because the manufacturer knew of the risk of danger, the court did not have to address the implications of the manufacturer's inability to foresee the risk." 47 La.L.Rev. 637 at 643.
[17] Overruled on other grounds in Mile High Fence Company v. Radovich, 175 Colo. 537, 489 P.2d 308, 311 (1971).
[18] Overruled on other grounds in DiMare v. Cresci, 58 Cal.2d 292, 23 Cal.Rptr. 772, 373 P.2d 860, 864 (1962).
[19] "` (1) It may be inferred that harm suffered by the plaintiff is caused by negligence of the defendant when

"(a) the event is of a kind which ordinarily does not occur in the absence of negligence;
"(b) other responsible causes, including the conduct of the plaintiff and third persons, are sufficiently eliminated by the evidence; and
"(c) the indicated negligence is within the scope of the defendant's duty to the plaintiff. " (2) It is the function of the court to determine whether the inference may reasonably be drawn by the jury, or whether it must necessarily be drawn.
" (3) It is the function of the jury to determine whether the inference is to be drawn in any case where different conclusions may reasonably be reached.'" Gilbert v. Korvette, Inc., 327 A.2d 94 at 100 (Pa., 1974).
[20] LSA-C.C. art. 2317 provides:

"We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody. This, however, is to be understood with the following modifications."
[21] This is debatable; a plastic side plate to eliminate entrapment spaces at the sides of escalator treads has been patented. Side Plate Designed To Help Reduce Escalator Accidents, Plastics in Engineering, Issue 3, 1984, at 2.