**Stephen T. LADUE, Plaintiff–Appellant,**

v.

**CHEVRON, U.S.A., INC., Defendant–Appellee.**

No. 90–3238.

United States Court of Appeals, Fifth Circuit.

Jan. 4, 1991.

Rehearing and Rehearing En Banc Denied Feb. 7, 1991.

Edward F. Kohnke, IV, Richard V. Kohnke, Healey & Kohnke, New Orleans, La. for plaintiff-appellant.

David L. Duplantier, U.S. Atty., Chevron, Inc., George Burton Jurgens, III, Marion L. Fagan, Milling, Benson, Woodward, Hillyer, Pierson & Miller, New Orleans, La., for defendant-appellee.

Before RUBIN, SMITH, and BARKSDALE, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

A roustabout, employed by an independent contractor hired to replace decayed deck grating on an offshore mineral-production platform, was injured when a piece of the deck grating gave way under his weight. He brought suit under the Outer Continental Shelf Lands Act, alleging that the platform owner was strictly liable under Louisiana Civil Code Articles 2317 and 2322. Because we believe that the Louisi-

ana Supreme Court would hold that the platform owner owed no duty under these articles to an independent-contractor repairman injured by the very condition he was hired to repair, we affirm the summary judgment granted by the district court.

## I

Stephen T. Ladue was employed as a roustabout by Bama Contractors, Inc., an oil-field construction contractor. Bama contracted with Chevron to replace the deteriorating deck gratings on Chevron's South Pass 78D oil and gas platform, located off the coast of Louisiana. Bama was told by Chevron that the gratings were rusted and in poor condition; Bama nevertheless entered into the contract and represented to Chevron that it could perform the work safely. Ladue was a member of the welding crew dispatched by Bama to do the job.

The crew's method of operation was to cut the welds holding one piece of grating in place, lift it out of the deck, immediately replace it with a new piece of grating, and then promptly weld the new piece to the structural support beams of the platform. The crew replaced the grating sequentially, moving from one side of the platform to the other.

Ladue was assisting the Bama crew in removing a piece of grating approximately eighteen inches wide by seven feet long. He was standing on a piece of old grating immediately adjacent to the piece being changed. This was the next section to be changed and it had, in fact, already been cut free from one of the two structural beams supporting it. As Ladue reached down to lift out the grating being changed, the piece he was standing on broke loose. Ladue managed to avoid falling into the water seventy feet below by catching hold of the deck, but in doing so he injured his hand, arm, shoulder, and back.

Ladue brought suit against Chevron under the Outer Continental Shelf Lands Act,[1] claiming that Chevron was strictly liable for his injuries under Louisiana Civil Code Articles 2317 and 2322, and liable in negligence under Civil Code Article 2315. The district court granted Chevron's motion for summary judgment on all three causes of action.[2] Ladue challenges the district court's judgment only with respect to his strict liability claims under Articles 2317 and 2322.

## II

Summary judgment is appropriate only if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law."[3] In ruling on a motion for summary judgment, the court must first ascertain from the applicable substantive law which factual issues are material; then, viewing the evidence submitted in a light most favorable to the nonmovant, the court must decide whether a reasonable trier of fact could find for the nonmoving party.[4] We review the district court's ruling on a motion for summary judgment de novo.[5]

### A. *Ascertaining the Applicable Law*

To recover under Article 2317,[6] a plaintiff must prove "that he was injured by a defective thing which was in the care or custody of the defendant."[7] To recover under Article 2322,[8] a plaintiff must prove

---

1. 43 U.S.C. § 1333(a)(2) (1988); *see Gulf Offshore Co. v. Mobil Oil Corp.*, 453 U.S. 473, 480–81, 101 S.Ct. 2870, 2876, 69 L.Ed.2d 784 (1981).

2. *Ladue v. Chevron, U.S.A., Inc.*, 733 F.Supp. 1075 (E.D.La.1990).

3. Fed.R.Civ.P. 56(c).

4. *Lavespere v. Niagara Machine & Tool Works, Inc.*, 910 F.2d 167, 177–78 (5th Cir.1990).

5. Id. at 177.

6. La.Civ.Code Ann. art. 2317 (West 1979) provides:

   We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody....

7. *Fonseca v. Marlin Marine Corp.*, 410 So.2d 674, 679 (La.1981).

8. La.Civ.Code Ann. art. 2322 (West 1979) provides:

"that his injury was caused by the ruin of a building owned by the defendant, and that the ruin was attributable to a vice in the building's original construction or to a failure to repair it."[9] Under both Articles, a plaintiff must prove that the vice or defect at issue posed an unreasonable risk of injury.[10]

Chevron argues that neither Article 2317 nor Article 2322 should be read to extend the liability of the owner of a thing or a building to an independent-contractor repairman who is injured by the very condition he has been hired to repair. Ladue counters that the Louisiana courts have recognized no such exception to the strict liability scheme created by those provisions. Each side cites a number of cases decided by the Louisiana courts to support its respective position.

■ When adjudicating claims for which state law provides the rules of decision, even when those claims are "federal questions" in form, we are bound to apply the law as interpreted by the state's highest court.[11] When the state's court of last resort has yet to speak on an issue, as in this case, our task is to determine, to the best of our ability, how that court would rule if the issue were before it.[12] We are therefore bound by an intermediate state appellate court decision only when we remain unconvinced "by other ... data that the highest court of the state would decide otherwise."[13]

> The owner of a building is answerable for the damage occasioned by its ruin, when this is caused by neglect to repair it, or when it is the result of a vice in its original construction.

9. *Fonseca,* 410 So.2d at 679.

10. *Sistler v. Liberty Mutual Ins. Co.,* 558 So.2d 1106, 1112–13 (La.1990); *Entrevia v. Hood,* 427 So.2d 1146, 1148 (La.1983).

11. *See Commissioner of Internal Revenue v. Estate of Bosch,* 387 U.S. 456, 465, 87 S.Ct. 1776, 1783, 18 L.Ed.2d 886 (1967).

12. *See Jackson v. Johns–Manville Sales Corp.,* 781 F.2d 394, 397 (5th Cir.) (en banc), *cert. denied,* 478 U.S. 1022, 106 S.Ct. 3339, 92 L.Ed.2d 743 (1986).

The only Louisiana decision directly on point is *Mason v. Liberty Mutual Insurance Company,*[14] decided in 1982 by the Louisiana Court of Appeal for the Fourth Circuit. Mason was employed by a renovation contractor. He fell and injured himself while on the roof of a porch, attempting to determine whether the porch could be repaired or whether it must be demolished. Like Ladue, Mason brought suit under Articles 2315, 2317, and 2322. The trial court in effect granted summary judgment on Mason's claims under Articles 2317 and 2322, concluding that those two articles should not be read to " 'destroy the basic protections afforded owners of immovables who seek to maintain their property in a proper state of repair.... In our view it was never intended that a repairman could recover against an owner [under Article 2322] if said repairman is attempting to respond to the call to make repairs.' "[15]

The court of appeals reversed. The court first cited dicta in the Louisiana Supreme Court's decisions in *Olsen v. Shell Oil Company*[16] and *Fonseca v. Marlin Marine Corporation*[17] to support the proposition that Articles 2317 and 2322 encompass all persons injured by a defective thing or building. In *Olsen,* the Louisiana Supreme Court had remarked that " 'it would be singular, indeed, if the men at work in [a] building were excluded from the[ ] just and salutary operation [of Arti-

13. *West v. American Tel. & Tel. Co.,* 311 U.S. 223, 237, 61 S.Ct. 179, 183, 85 L.Ed. 139 (1940); *NCH Corp. v. Broyles,* 749 F.2d 247, 250 n. 4 (5th Cir.1985); *Taylor v. Jim Walter Corp.,* 731 F.2d 266, 267 (5th Cir.1984). *Cf. Green v. Walker,* 910 F.2d 291, 294 (5th Cir.1990) (Louisiana intermediate appellate court decision merely a "guide" to federal court in its decision-making process).

14. 423 So.2d 736 (La.App. 4th Cir.1982), *writ denied,* 425 So.2d 773 (La.1983).

15. Id. at 737 (quoting trial court's order).

16. 365 So.2d 1285 (La.1978).

17. 410 So.2d 674 (La.1981), *modified on rehearing,* 410 So.2d 681 (La.1981).

cle 2322].' " [18] In *Fonseca,* the court stated in passing that "Article 2322 makes the owner of a building answerable in damages to any person who is injured—while rightfully inside or outside the building—in an accident caused by the owner's neglect to repair the building or from a vice (defect) in its original construction." [19] The *Mason* court declined to follow dicta in decisions by other state courts of appeals, concluding that the Louisiana Supreme Court had never expressed any intention "to insulate an owner of a building from a claim of strict liability under [Article] 2322 to a repairman who is injured through the owner's neglect to repair or from a vice in the original construction." [20]

While the *Mason* decision is instructive, we are convinced after examining all of the pertinent authorities that the Louisiana Supreme Court would decide otherwise. In *Entrevia v. Hood,*[21] decided subsequent to the Louisiana Fourth Circuit's decision in *Mason,* the Louisiana Supreme Court issued a comprehensive statement on the manner in which a court is to determine liability under Articles 2317 and 2322. The plaintiff in *Entrevia* was injured when the steps leading to an abandoned house collapsed beneath her. She was on the premises without the owner's knowledge or permission; the house was obviously vacant, and was surrounded by a fence and "No Trespassing" signs. The plaintiff brought suit against the owner under Articles 2317 and 2322.

The Louisiana Supreme Court began by examining the principles of fault underlying the strict liability provisions of Articles 2317 and 2322. Quoting at length from its landmark decision in *Loescher v. Parr,*[22] the court emphasized that Articles 2317 and 2322 impose liability only when the defect in the thing or building " 'creates an *unreasonable* risk of harm to others.... [The owner's] fault rests upon his failure to prevent the risk creating harm and upon his obligation to guard against the condition ... which creates the unreasonable risk of harm to others.' " [23] Because this is so, the court held, a building owner "cannot be held responsible for *all* injuries resulting from *any* risk posed by his building." He may be held liable for "only those caused by an *unreasonable* risk of harm to others." [24]

Determining whether a particular risk is unreasonable is a question to be decided "from the standpoint of justice and social utility." [25] "Except in the clearest of cases, it is necessary for the judge, in shaping his decision about how the law applies to the facts, to consider the particular situation from the same standpoint as would a legislator regulating the matter." [26] The court must consider "the moral, social and economic values [involved] as well as the ideal of justice in reaching an intelligent and responsible decision." [27]

The Louisiana Supreme Court explicitly recognized that this sort of analysis "is similar to that employed in determining whether a risk is unreasonable in a traditional negligence problem, and in deciding the scope of duty or legal cause under the duty risk analysis." [28] "In both delictual areas the judge is called upon to decide questions of social utility that require him to consider the particular case in terms of moral, social and economic considerations." [29] The two analyses are not identical, however, for under Articles 2317 and 2322 "the inability of a defendant to know

**18.** *Olsen,* 365 So.2d at 1294 (quoting *Camp v. Church Wardens,* 7 La. Ann. 321, 325 (1852)).

**19.** *Fonseca,* 410 So.2d at 679.

**20.** *Mason,* 423 So.2d at 738.

**21.** 427 So.2d 1146 (La.1983).

**22.** 324 So.2d 441 (La.1975).

**23.** *Entrevia,* 427 So.2d at 1148 (quoting *Loescher,* 324 So.2d at 446–47) (emphasis added).

**24.** Id. at 1149 (emphasis added).

**25.** Id.

**26.** Id.

**27.** Id.

**28.** Id. (citations omitted).

**29.** Id.

or prevent the risk is not a defense." [30] The strict liability inquiry thus focuses on whether the risk posed by the thing or building is itself unreasonable, and not upon the defendant's conduct in creating or in failing to abate that risk.[31]

In determining whether the risk posed by the rotting stairs at issue in *Entrevia* was unreasonable, the court found it significant that the plaintiff was a trespasser. "An owner of property has valid economic and privacy interests which our law seeks to protect from intruders such as the plaintiff." [32] In addition, the court noted that the building was in an isolated, rural location and had little economic value. The owner of such a building is "typically . . . in a poor position to absorb the costs of premises risks and redistribute them among the community," and a rule of law forcing such owners either to engage in costly renovations or to destroy the structure entirely had little to recommend it. As the "property posed [no] dangers other than those typically associated with a somewhat rundown old farm house," "the magnitude of the risk posed and the gravity of the harm threatened were [comparatively] small." [33]

Since its decision in *Entrevia*, the Louisiana Supreme Court has not decided a case in which the moral, social, and economic values considered are analogous to those involved here, although it has decided a number of other strict-liability claims in other situations.[34] Our conclusion that the Louisiana high court would not follow the decision in *Mason* is supported, however, by dicta in several cases, both pre- and post-*Entrevia*, from Louisiana's First Circuit Court of Appeal. In *Temple v. General Insurance Company*,[35] decided in 1974, the court stated that there was no authority holding that Article 2322 was "applicable to the construction or repair of a building." [36] In *Stine v. Creel*,[37] decided eight months before *Entrevia*, the Louisiana First Circuit held that a plaintiff's recovery was barred because his injuries were caused by his own negligence. The court noted, however, that it would be anomalous to impose liability on a building owner under Articles 2317 and 2322 for injuries suffered by a repairman caused by the very defect he was hired to repair:

> One of the effects of [hiring the repairman] would be to avoid the very liability imposed by [Article] 2322. . . . To [impose liability] would be to place strict liability upon any owner who went about repairing a building. To the contrary, the law should and does encourage owners to repair. If they elect *not* to repair, then the owner is strictly liable for damages resulting from the ruin or collapse of his building.[38]

30. Id. at 1150.

31. Id.; *see Ross v. La Coste de Monterville*, 502 So.2d 1026, 1032–34 (La.1987); Casenote, *Entrevia v. Hood*: Back to *Loescher v. Parr*, 44 La.L. Rev. 1485, 1491–93 (1984).

32. *Entrevia*, 427 So.2d at 1150.

33. Id.

34. *See, e.g., Sistler v. Liberty Mutual Ins. Co.*, 558 So.2d 1106 (La.1990) (restaurateur liable under arts. 2317 and 2322 when woman tripped on one-inch elevation in doorway); *Crowell v. Alexandria*, 558 So.2d 216 (La.1990) (city liable under art. 2317 for auto accident caused by defective cross-drain in road); *Murray v. Ramada Inns*, 521 So.2d 1123 (La.1988) (innkeeper liable under art. 2317 when swimmer dived into shallow pool); *Riche v. Baton Rouge*, 515 So.2d 765 (La.1987) (city liable under art. 2317 when bicyclist hit movable barricade obtruding from catch basin); *Brown v. Sears, Roebuck & Co.*, 514 So.2d 439 (La.1987) (store owner liable under art. 2317 when child injured by escalator); *Ross*, 502 So.2d 1026 (ladder owner liable under art. 2317 when ladder collapsed, injuring borrower); *Landry v. State*, 495 So.2d 1284 (La. 1986) (state liable under art. 2317 when fisherman injured by hole beside seawall); *Farlow v. Roddy*, 493 So.2d 592 (La.1986) (state Department of Transportation liable under art. 2317 for dangerous condition of roadway); *Brown v. Winn–Dixie Louisiana*, 452 So.2d 685 (La.1984) (store owner liable under art. 2317 when shopper slipped on spilled rice).

35. 306 So.2d 915 (La.App. 1st Cir.1974), *writ denied*, 310 So.2d 643 (La.1975).

36. Id. at 917.

37. 417 So.2d 1243 (La.App. 1st Cir.), *writ denied*, 422 So.2d 163 (La.1982).

38. Id. at 1246 (quoting the trial judge) (emphasis added).

The Louisiana First Circuit quoted with approval this language from *Stine* in its 1989 decision in *Triplette v. Exxon Corporation*.[39] Though holding again that the plaintiff's injuries were caused by his own negligence, the *Triplette* court found it significant that the plaintiff's independent-contractor employer had contracted with Exxon to repair the cooling tower at issue, and had represented that it could safely perform the work.[40]

### B. Applying the Entrevia Analysis

■ Using the method of analysis prescribed in *Entrevia,* we conclude that Ladue could not prove, as a matter of law, that the risk posed by the deteriorated grating was unreasonable as required by both Articles 2317 and 2322. The facts material to that determination are not disputed. Chevron admits that all of the grating was deteriorated and required replacement. Ladue admits both that he was employed by an independent oil-field contractor hired by Chevron to do just that, and that the injury occurred while he was engaged in making the very repairs Bama was hired to effect. We may infer from the record that Ladue's injury was caused by the faulty grating, and not the work practices of the Bama crew or Ladue's own negligence.

Whether a particular risk of harm is reasonable cannot be determined in a vacuum. The phrase "unreasonably dangerous", in the words of Louisiana's late distinguished Professor Wex S. Malone, "has no discernible content of its own and ... must acquire its meaning solely from the environment attendant on each of the variety of disputes in which it is put to use."[41] Unlike the regime of strict products liability, which uses the "ordinary consumer" as its benchmark,[42] Louisiana's scheme of strict liability under Articles 2317 and 2322 posits no constant person or persons, mythical or real, with respect to whom the reasonableness of a given risk is to be measured. For that reason, the Louisiana courts have found themselves—under the rubric of assessing a risk "under all of the circumstances of a particular case"[43]—determining the reasonableness of a given risk "vis-a-vis the plaintiff,"[44] or more accurately, vis-a-vis the plaintiff and those similarly situated.[45] Therefore, we need not determine whether the grating on Chevron's platform was unreasonably dangerous with respect to the world at large, or even with respect to the Chevron employees who performed their daily work on the platform. We need only determine whether the grating was unreasonably dangerous with respect to Ladue and those similarly situated.

The risk faced by Ladue and his fellows was entirely reasonable. The deck grating was a basic and essential part of the platform, a structure with obvious social and economic benefits. Because this is so, the community as a whole is served by the owner's efforts to maintain the grating. The better rule of law, therefore, would encourage the owner to repair the platform, for that is the "socially and economically desirable"[46] state of affairs.

This conclusion is supported by the principles underlying Articles 2317 and 2322. Article 2322, for example, specifically imposes liability either where the building's "ruin" is caused by a "vice in its original construction," or by the owner's *"neglect to repair* it."[47] The owner's "fault rests upon his failure to prevent the risk-creating harm and upon his obligation to guard

**39.** 554 So.2d 1361 (La.App. 1st Cir.1989).

**40.** Id. at 1364.

**41.** Malone, Ruminations on Liability for the Acts of Things, 42 La.L.Rev. 979, 998 (1982).

**42.** *See Halphen v. Johns–Manville Sales Corp.,* 484 So.2d 110, 115 (La.1986); Restatement (Second) of Torts § 402A comment i (1965).

**43.** *Brown v. Sears, Roebuck & Co.,* 514 So.2d 439, 445 (La.1987) (Cole, J., concurring).

**44.** *Murray v. Ramada Inns,* 521 So.2d 1123, 1136 (La.1988); *see Brown,* 514 So.2d at 444 (escalators are unreasonably dangerous to small children).

**45.** *See Murray,* 521 So.2d at 1136 ("defendants owed a duty to all potential *users of the pool"* to operate it safely).

**46.** *Entrevia,* 427 So.2d at 1150.

**47.** La.Civ.Code Ann. art. 2322 (West 1979) (emphasis added).

against the condition ... which creates the unreasonable risk of harm." [48] One way to discharge that obligation is by repairing a potentially dangerous condition. Articles 2317 and 2322, by allocating the burden of loss, give owners an economic incentive to effect such repairs.

That incentive would be destroyed if owners are held strictly liable when repairmen are injured by the very condition they are hired to repair. Repair operations increase the owner's exposure by focusing activity on the defective part of the structure. The owner cannot avoid strict liability by depending on the independent contractor to protect the safety of his employees as he might in a negligence action. Thus, the owner in effect would become an involuntary workers' compensation insurer. This would increase the cost of effecting repairs, deterring owners from maintaining socially and economically valuable structures. Subjecting repairmen to the risks involved in a given operation is a reasonable course of action, for they are presumptively cognizant of those risks and are able to minimize them.

Imposing strict liability on building owners also might have one important secondary effect: it might encourage renovation contractors to cut corners both in safety practices and in insuring against possible injury. Any employee injured on a job under a strict-liability regime would be fully compensated by the building owner at no cost to the contractor. The incentive for the contractor to provide for the safety of his employees and for their well-being in case of injury is thus reduced.

We see no countervailing benefits to holding building owners strictly liable in these circumstances. We conclude that the social and economic factors that *Entrevia* commands us to consider militate against imposing strict liability in this instance.

Accordingly, the judgment of the district court is AFFIRMED.

---

**48.** *Entrevia,* 427 So.2d at 1148 (quoting *Loescher*    v. *Parr,* 324 So.2d 441, 446 (La.1976)).