940 F.2d 139
 Dexter Jean GARY, Kay Gary and Dirk Gary, Plaintiffs-Appellees,
Commercial Union Insurance Co. and Linda Ann Faulk, As
Natural Tutrix of Raven Kay Gary, Intervening
Plaintiffs-Appellees,
v.
CHEVRON, U.S.A., INC., Defendant-Third Party Plaintiff-Appellant,
v.
MALONEY-CRAWFORD, INC., Third Party Defendant-Fourth Party
Plaintiff-Appellant,
v.
FEDERAL INSURANCE CO., Fourth-Party Defendant Appellee.
 No. 90-4436.
 United States Court of Appeals,
Fifth Circuit.
 Sept. 3, 1991.
Rehearing Denied Oct. 17, 1991.
 
 Frank E. Lemoine, Darrell J. Hartmen, Abbeville, La., for Gary, et al.
 Patrick J. Hanna, Joseph L. Lemoine, Jr., Onebane, Donohoe, Bernard, Torian, Diaz, McNamara & Abell, Lafayette, La., for Commercial Union Ins. Co.
 Katherine W. Vincent, J. Isaac Funderburk, Funderburk, Conque, Edwards & Herrin, Abbeville, La., for Linda Ann Faulk.
 Stephen C. Carleton, George B. Jurgen, III, Milling, Benson, Woodward, Hillyer, Pierson & Miller, New Orleans, La., for Chevron.
 Michael W. Adley, Juneau, Hill, Judice & Adley, Lafayette, La., for Federal Ins. Co.
 Appeal from the United States District Court for the Western District of Louisiana.
 Before REAVLEY, POLITZ and JOLLY, Circuit Judges.
 REAVLEY, Circuit Judge:
 
 
 1
 Chevron U.S.A., Inc. appeals from the district court's judgment holding it strictly liable under Louisiana law for damages resulting from a loose grate on one of its offshore drilling platforms. We affirm.I. BACKGROUND
 
 
 2
 In late 1986, Chevron contracted with Acadian Contractors, Inc. to renovate several of its offshore drilling platforms. For each platform, Chevron gave Acadian a "punch list" of specific tasks to be performed and the necessary materials. Acadian's employees understood that if they noticed items on a platform that needed repair but were not on the punch list, they would not be paid for labor on these items unless they first obtained Chevron's permission to make the repairs.
 
 
 3
 Dexter J. Gary worked for Acadian on one of Chevron's platforms as a welder and pipe-fitter. On November 25, 1986, Gary finished some pipe work on a carbon filter above the platform and descended a ladder onto the platform floor. He turned around and took one step onto a piece of grating. The grate gave way and Gary fell approximately three feet into a drip pan, injuring his back, neck, and leg.
 
 
 4
 The defectively short and misfit grate through which Gary fell constituted a defect in the platform's original construction. The grate was not rusty, sagging, or riddled with pipe holes. Foremen from both Chevron and Acadian inspected the area without noticing the defective grate because the defect was one of fit.
 
 
 5
 The platform's punch list required Acadian to remove some reboiler pumps and piping that were located near the grate where Gary fell, and to install grating once Acadian removed the pumps' base. The punch list does not specifically require Acadian to replace the grate through which Gary fell. At the time of Gary's accident, other Acadian employees had removed the reboiler pumps and piping, but not the base. Acadian's work possibly made it easier for Gary to access the defective grate, but the grate was accessible for use and inspection before Acadian began work in the area.
 
 
 6
 After a bench trial, the district court held that under Louisiana law, Chevron is strictly liable for Gary's damages as the platform's owner.
 
 II. DISCUSSION
 
 7
 In Louisiana,
 
 
 8
 [t]he owner of a building is answerable for the damage occasioned by its ruin, when this is caused by neglect to repair it, or when it is the result of a vice in its original construction.
 
 
 9
 LA.CIV.CODE ANN. art. 2322 (West 1979). Chevron concedes on appeal that it owns the platform on which Gary fell, that its platform is an article 2322 "building," that the grate caused damages to Gary and his family, and that any ruin attributable to the grate is the result of a vice in original construction.
 
 
 10
 Chevron argues that article 2322 contains a "construction/repair" exception to strict liability for building defects to employees of independent contractors hired to maintain its buildings. No case admits such a broad exception and we will not create one. We recognize three categories of cases where building maintenance personnel may not recover from owners under article 2322.
 
 
 11
 Courts have absolved building owners from article 2322 liability by attributing the cause of the injury to something other than building ruin. See, e.g., Stine v. Creel, 417 So.2d 1243, 1246 (La.App.) ("It was not the ruin of the roof that caused the fall and resulting injuries to [roofer] Stine. It was the unsafe manner by which Stine sought to remove the roof section that caused his fall."), writ denied, 422 So.2d 163 (La.1982). The district court did not find fault with Gary, Acadian, or Chevron, so this case involves no intervening cause.
 
 
 12
 Other courts have refused to find article 2322 liability to construction workers when the building ruin that causes their injuries does not result from owner neglect or a vice in original construction. See, e.g., Ainsworth v. Shell Offshore, Inc., 829 F.2d 548, 552 (5th Cir.1987) (article 2322 does not impose liability for damages incurred during the construction of a building or the addition of an appurtenance), cert. denied, 485 U.S. 1034, 108 S.Ct. 1593, 99 L.Ed.2d 908 (1988). Here, Chevron agrees that if the defective grate is a ruin as to Gary, it is a vice of original construction.
 
 
 13
 Finally, article 2322 damages are unavailable to a repairperson who is injured by the thing or condition that the repairperson is hired to fix. LaDue v. Chevron U.S.A., Inc., 920 F.2d 272, 278 (5th Cir.1991). Stephen LaDue worked for Bama Contractors, Inc., another of Chevron's independent contractors. Chevron hired Bama to replace deteriorating grating on another of its offshore drilling platforms and Bama represented to Chevron that it could perform the work safely. LaDue was injured when a piece of the old grating that he was about to change gave way as he stood on it. Id. at 273. This court read Entrevia v. Hood, 427 So.2d 1146, 1148-49 (La.1983) as requiring a building defect to create an "unreasonable risk of harm to others" before it acquires the status of an article 2322 "ruin." LaDue, 920 F.2d at 275. This court affirmed summary judgment against LaDue because the decayed grating through which he fell did not pose an unreasonable risk to people like him who came onto the platform to fix the very defect that caused his injuries. Id. at 278.
 
 
 14
 Chevron offers two theories to explain why LaDue controls this case, but we reject them both. First, Chevron claims that like LaDue's Bama, Acadian contracted to replace the grate through which Gary fell. But the district court found that "it was clear that Chevron had not given specific approval ... for grating work ... to be done in the area." We will set aside this finding only if it is clearly erroneous. Chevron contends that Acadian twice consented to replace the grate through which Gary fell.
 
 
 15
 Acadian agreed to remove reboiler pumps and pipes near the grate through which Gary fell. In the punch list's item 66, Acadian agreed to "install grating over area on production deck @ reboilers old location." But the defective grate and the pumps were on opposite sides of a structural beam supporting the grates in the area, and the defective grate was not touched by any of the reboiler equipment that Acadian agreed to replace. It was not error for the district court to conclude that Acadian's work with the reboiler pumps did not require replacement of the grate through which Gary fell.
 
 
 16
 Chevron also points to item 56 on the platform's punch list in support of its argument that Acadian agreed to replace the defective grate. In item 56, Acadian agreed to "add supports as necessary to support grating in production skid." But James L. Smith, Jr., Chevron's construction foreman who drafted the punch list, testified that under item 56, Chevron wanted Acadian to replace grating that was identified as sagging or riddled with pipe holes, and that "it can't refer to something [Chevron] didn't know about." While foremen from both Chevron and Acadian inspected the area for defective grating, neither found the fit defect in the grate through which Gary fell. The grate had no obvious defect like rust, pipe holes, or sag. The record supports the finding that Acadian did not agree to replace the grate through which Gary fell until after the accident.
 
 
 17
 Chevron's alternate theory for invoking LaDue is based on Acadian's agreement to report anything in need of repair on the platform. Accepting that Acadian agreed to notify Chevron of any defective grating that its employees encountered, LaDue still does not control this case because an agreement to report defects is not the same as an agreement to find or fix them. LaDue embodies the principle that a building defect is not unreasonably dangerous to one who agrees to repair the defect because that person is expected to take appropriate safety precautions concerning the defect. This principle facilitates the elimination of building defects, the objective of article 2322. See LaDue, 920 F.2d at 277-78.
 
 
 18
 By simply agreeing to report anything in need of repair, Acadian's employees could not know the necessary safety precautions as did LaDue. Acadian never accepted responsibility for finding defective grating, and there is no record indication that it was paid anything for simply locating grating defects. Acadian's employees only testified that if they found defective grating, they were to report it to Chevron and obtain permission to repair it.
 
 
 19
 In accordance with article 2322's purpose of encouraging building repair, owners may hire people who will take appropriate precautions to look for certain defects. But to exonerate owners who only ask that repairpersons report building defects as they perform their services would allow owners to deny article 2322 protection to all repairpersons.
 
 
 20
 AFFIRMED.
 
 E. GRADY JOLLY, Circuit Judge, concurring:
 
 21
 As I understand the majority opinion, Ladue v. Chevron, 920 F.2d 272 (5th Cir.1991), does not apply here because Acadian, Gary's employer, was not hired to find and replace defective grating. I concur only with the understanding that if this duty had been part of Acadian's contract with Chevron, Ladue would require us to reach a different result.