**Carl JURECZKI and Lora Jureczki, Plaintiffs,**

v.

**BANC ONE TEXAS, N.A.; Banc One Securities Corporation; Banc One Insurance Agency Inc., and Bill Berry, Defendants.**

**No. CIV.A.H–02–4830.**

United States District Court,
S.D. Texas,
Houston Division.

March 3, 2003.

Thomas Nolon Lightsey, III, Attorney at Law, Frank W Mitchell, Maloney Martin & Mitchell, Houston, for Carl Jureczki, Lora Jureczki, plaintiffs.

Richard E Griffin, Jackson Walker, Carole Elaine Howard, Jackson Walker LLP, Houston, for Bank One Texas N.A., Banc One Securities Corporation, Banc One Insurance Agency, Inc., Bill Berry, defendants.

### MEMORANDUM AND ORDER

LAKE, District Judge.

Plaintiffs, Carl Jureczki and Lora Jureczki, bring this action against defendants, Bank One Texas, N.A.,[1] Banc One Securities Corporation, Banc One Insurance Agency, Inc., and Bill Berry, for violation of § 10(b) of the Securities and Exchange Commission Act of 1934, 15 U.S.C.

---

1. Bank One Texas, N.A. is actually Bank One, N.A. (Chicago), successor by merger to Bank One Texas, N.A. See Motion to Compel, Docket Entry No. 14, p. 1.

§ 78, and §§ 35(d) and 36(a) of the Investment Company Act of 1940, 15 U.S.C. § 80, and for fraud, conspiracy, negligent and fraudulent misrepresentation, breach of the duty of good faith and fair dealing, breach of contract, and conversion in violation of Texas law. Pending before the court are Defendants' Motion to Dismiss (Docket Entry No. 11) and Defendants' Motion to Compel Arbitration and Stay Proceedings (Docket Entry No. 14). For the reasons set forth below, defendants' motion to compel will be granted, and this action will be dismissed.

## I. *Factual Background*

In December of 1998 plaintiffs established a deposit account with Bank One for which they executed a signature card. On October 4, 2000, Carl Jureczki met with Bill Berry, an employee of Banc One Securities, who advised Jureczki to purchase a variable annuity. Shortly thereafter, approximately $800,000.00 was withdrawn from plaintiffs' deposit account at Bank One and used to purchase a variable annuity. Plaintiffs allege that the purchase was made without their knowledge or permission and that when they sought to recoup their funds they were told that the funds could not be "un-invested" without payment of a substantial penalty. Plaintiffs allege that they ultimately lost close to $400,000.00 and were charged a penalty when they sought to mitigate their damages.

## II. *Motion to Compel Arbitration*

Asserting that the plaintiffs have agreed to arbitrate any claim arising from their deposit account at Bank One and that all of plaintiffs' claims arise from their allegation that funds were withdrawn from that deposit account without their authorization, defendants move the court to compel arbitration. Asserting that they never agreed to arbitrate claims arising from their deposit account at Bank One and that three of the four defendants named in this action are not parties to the deposit account, plaintiffs urge the court to deny the defendants' motion to compel arbitration.

## A. Standard of Review

The Federal Arbitration Act (FAA), 9 U.S.C. §§ 1 *et. seq.*, creates "a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983). Section 2 of the FAA states that a written arbitration agreement in any contract involving interstate commerce is valid, irrevocable, and enforceable except on grounds that would permit the revocation of a contract in law or equity. *Id.* ("Section 2 is a congressional declaration of a liberal federal policy favoring arbitration agreements."). Section 4 of the FAA permits a party to seek an order compelling arbitration if the other party has failed to arbitrate under a written agreement. When deciding whether parties should be compelled to arbitrate, courts conduct a two-step inquiry. *OPE International LP v. Chet Morrison Contractors Inc.*, 258 F.3d 443, 445 (5th Cir.2001). First, a court must decide whether the parties agreed to arbitrate their dispute. *Id.* Second, if the court determines that the parties agreed to arbitrate the dispute, the court must consider "whether legal constraints external to the parties' agreement foreclosed the arbitration of those claims." *Id.* at 446. If a valid agreement is found, and there are no legal constraints external to the agreement that foreclose arbitration, arbitration is mandatory. *Volt Information Sciences, Inc. v. Bd. of Trustees of Leland Stanford Junior University*, 489 U.S. 468, 109 S.Ct. 1248, 1253–1254, 103 L.Ed.2d 488 (1989). *See also Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth Inc.*, 473 U.S. 614, 105 S.Ct. 3346, 3354–3355, 87 L.Ed.2d 444 (1985) ("Having made the bargain to arbi-

trate, the party should be held to it unless Congress itself has evinced an intention to preclude a waiver of judicial remedies.").

## B. Analysis

Plaintiffs argue that they should not be compelled to arbitrate the claims asserted in this action because: (1) they never agreed to arbitrate their claims against Bank One; (2) assuming that they did agree to arbitrate their claims against Bank One, the claims asserted in this action do not fall within the scope of that agreement; and (3) the arbitration agreement is unconscionable as a matter of law.

### 1. *Agreement to Arbitrate*

Determination of whether the parties agreed to arbitrate their dispute involves two considerations: "(1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement." *OPE International,* 258 F.3d at 445. *See also Pennzoil Exploration and Production Co. v. Ramco Energy Ltd.,* 139 F.3d 1061, 1065 (5th Cir. 1998).

#### (a) Existence of a Valid Agreement

Federal courts have held that the agreement to arbitrate is separable from the entire contract as a whole. *See Cone Memorial Hospital,* 103 S.Ct. at 941, 103 S.Ct. 927. The court must determine the validity of the arbitration agreement separately from the validity or invalidity of the main contract. *Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 87 S.Ct. 1801, 1806, 18 L.Ed.2d 1270 (1967). Federal policy favoring arbitration does not extend to determination of who is bound to arbitrate. *Id.* at n. 12, 87 S.Ct. 1801. Disputes over the validity of agree-ments to arbitrate are analyzed under ordinary state-law principles of contract construction. *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 115 S.Ct. 1920, 1924, 131 L.Ed.2d 985 (1995).

#### (1) Applicability of Texas Law

Although neither party has addressed the issue of which state's law governs matters not addressed by the FAA, under Texas choice of law rules "the law of the state with the most significant relationship to the particular substantive issue will be applied to resolve that issue." *Fleetwood Enterprises, Inc. v. Gaskamp,* 280 F.3d 1069, 1073 n. 4 (5th Cir.2002), *quoting Duncan v. Cessna Aircraft,* 665 S.W.2d 414, 421 (Tex.1984). In this case the state with the most significant relationship to the arbitration clause is Texas. Plaintiffs are Texas residents, plaintiffs' deposit account was opened and maintained in Texas, and the arbitration clause at issue provides that "the federal judicial district that includes [plaintiffs'] mailing address at the time the Claim is filed" is the forum for arbitration.[2] To determine whether plaintiffs are bound by the arbitration agreement under Texas contract law the court applies the law as interpreted by the state's highest court, in this case, the Texas Supreme Court. *Fleetwood,* 280 F.3d at 1074, *citing Ladue v. Chevron, U.S.A., Inc.,* 920 F.2d 272, 274 (5th Cir.1991).

#### (2) Evidence Presented by the Parties

In support of their assertion that plaintiffs agreed to arbitrate all claims regarding their deposit account at Bank One, defendants submit the affidavit of Larry Alexander, a copy of the front of the signature card plaintiffs executed when they opened their deposit account, and portions of Bank One's Account Rules and Regulations. Alexander stated in his affidavit

---

**2.** Exhibit B–2 attached to Defendants' Motion to Compel, Docket Entry No. 14, third un-numbered page.

that the copy of the signature card is true and correct, and that the excerpts from the rules and regulations submitted were in effect when plaintiffs executed the signature card.[3] On the signature card above the plaintiffs' signatures appears the following language:

I acknowledge receipt of the Bank's Account Rules and Regulations, including all applicable inserts, and agree to be bound by the agreements and terms contained therein.[4]

The Account Rules and Regulations provide:

### Arbitration

Either party may, prior to the rendering of a judgment on any claim, dispute or controversy of any nature, whether asserted individually or jointly ("Claim") by either you or the Bank against the other, or against the employees, agents or assigns of the other, arising from or relating in any way to this Agreement or your Account, including Claims regarding the applicability of this arbitration provision or the validity of the entire Agreement, elect to have such claim resolved by binding arbitration by the National Arbitration Forum ... IN THE ABSENCE OF THIS ARBITRATION AGREEMENT YOU AND THE BANK MAY OTHERWISE HAVE HAD A RIGHT OR OPPORTUNITY TO LITIGATE CLAIMS THROUGH A COURT, AND/OR TO PARTICIPATE OR BE REPRESENTED IN LITIGATION FILED IN COURT BY OTHERS, BUT EXCEPT AS OTHERWISE PROVIDED ABOVE, UPON THE ELECTION OF EITHER PARTY, ALL CLAIMS MUST NOW BE RESOLVED THROUGH ARBITRATION.[5]

Defendants argue that "[b]y signing the signature card, Plaintiffs agreed to arbitrate every claim arising from or relating in any way" to their deposit account, and that their agreement to arbitrate extends to all the claims asserted in this action.[6]

Plaintiffs argue that they should not be compelled to arbitrate their claims against the defendants because the signature card does not reference arbitration, because they never received a copy of the Account Rules and Regulations referenced on the signature card, and because defendants have not produced the original signature card.[7] In support of this argument, plaintiffs submit the affidavit of Carl Jureczki stating that neither he nor his wife ever received a copy of the Account Rules and Regulations, and denying that either he or his wife ever agreed to arbitrate their disputes with Bank One.[8] Plaintiffs argue that their failure to receive a copy of the Account Rules and Regulations precludes the court from finding that a valid agreement to arbitrate exists because "no meeting of the minds took place with regard to the alleged arbitration agreement."[9] The court disagrees.

---

3. Exhibit B attached to Defendants' Motion to Compel, Docket Entry No. 14, third unnumbered page.

4. Exhibit B–1 attached to Defendants' Motion to Compel, Docket Entry No. 14.

5. Exhibit B–2 attached to Defendants' Motion to Compel, Docket Entry No. 14, third unnumbered page.

6. Defendants' Motion to Compel, Docket Entry No. 14, p. 4.

7. See Plaintiffs' Response to Defendants' Motion to Compel, Docket Entry No. 18, p. 2.

8. See Exhibit A to Plaintiffs' Response to Defendants' Motion to Compel, Docket Entry No. 18, p. 3.

9. Plaintiffs' Response to Defendants' Motion to Compel, Docket Entry No. 18, p. 7.

### (3) Application of Texas Law to the Evidence

Although plaintiffs assert that they never received the Account Rules and Regulations referenced on the signature card, they do not assert either that they did not sign the signature card, or that the arbitration provision attached to defendants' motion was not included in the Account Rules and Regulations in effect when they opened their deposit account and executed the signature card. Moreover, Carl Jureczki's affidavit statement that neither he nor his wife ever received the Account Rules and Regulations is contradicted by the signature card, which expressly states that they both did in fact receive the Account Rules and Regulations:

> By signing this Signature Card, I ... apply to open a deposit account at Bank One, Texas, N.A. ("Bank") ... I acknowledge receipt of the Bank's Account Rules and Regulations, including all applicable inserts, and agree to be bound by the agreements and terms contained therein.[10] (emphasis added)

■ Under Texas law "an unsigned paper may be incorporated by reference into a paper signed by the person sought to be charged. The language used is not important provided the document signed by the ... [party sought to be charged] plainly refers to another writing." *Trico Marine v. Stewart & Stevenson Technical Services, Inc.,* 73 S.W.3d 545, 549 (Tex.App.—Houston [1st Dist.] 2002, mandamus denied), *quoting Owen v. Hendricks,* 433 S.W.2d 164, 166 (Tex.1968). "An arbitration agreement is not invalid or unenforceable merely because it is contained in a document incorporated into a contract by reference." *Teal Constr. Co./Hillside Villas Ltd. v. Darren Casey Interests, Inc.,* 46 S.W.3d 417, 420 (Tex.App.—Austin 2001,

pet. denied), *citing D. Wilson Construction Co. v. McAllen Independent School District,* 848 S.W.2d 226, 230 (Tex.App.—Corpus Christi 1992, writ dism'd w.o.j).

■ The signature card signed by both plaintiffs expressly states: "I acknowledge receipt of the Bank's Account Rules and Regulations, including all applicable inserts, and agree to be bound by the agreements and terms contained therein."[11] This statement plainly refers to an external document, i.e., the Bank's Account Rules and Regulations, and plainly states that both plaintiffs agreed to be bound by the terms contained therein. Moreover, plaintiffs' assertion that they did not actually receive the Account Rules and Regulations does not defeat the signature card's statement that plaintiffs bound themselves to the terms contained therein. *See EZ Pawn Corp. v. Mancias,* 934 S.W.2d 87, 90 (Tex.1996) (A party who signs a contract containing an arbitration provision does not have to be told about the provision, but is presumed to know the contents of the contract.). *See also Emerald Texas, Inc. v. Peel,* 920 S.W.2d 398, 402 (Tex.App.—Houston [1st Dist.] 1996, no writ) (home builder has no affirmative duty to disclose to a prospective purchaser the existence of an arbitration provision in a home construction contract); *Shearson Lehman Bros., Inc. v. Kilgore,* 871 S.W.2d 925, 929 & n. 4 (Tex.App.—Corpus Christi 1994, no writ) (failure to disclose existence of arbitration provision in brokerage agreement was not fraudulent inducement).

Plaintiffs' argument that the copy of the signature card submitted by defendants does not constitute competent evidence is also insufficient to defeat defendants' assertion that the parties agreed to arbitrate their disputes. Secondary evidence of a

---

10. Exhibit B–1 attached to Defendants' Motion to Compel, Docket Entry No. 14.

11. Exhibit B–1 attached to Defendants' Motion to Compel, Docket Entry No. 14.

contract's terms is admissible under Federal Rule of Evidence 1004 as long as the original contract has not been destroyed or lost in bad faith. *See Klein v. Frank,* 534 F.2d 1104, 1107–08 (5th Cir.1976). *See also McCraw v. Maris,* 828 S.W.2d 756, 757 (Tex.1992). Because neither party to this action has produced either the original signature card or an original copy of Bank One's Account Rules and Regulations, and because plaintiffs fail to produce any evidence demonstrating that Bank One's failure to produce the originals is based on bad faith, or that the copies of the signature card and the Account Rules and Regulations that it did produce do not accurately reflect the terms governing the account, plaintiffs have failed to raise a colorable challenge either to the admissibility of the copy of the signature card or account rules and regulations booklet or to the existence of a written agreement to arbitrate.

Because under Texas law an unsigned paper may be incorporated by reference into a signed contract, because the signature card signed by plaintiffs expressly incorporates Bank One's Account Rules and Regulations, and because plaintiffs do not dispute either that they signed the signature card or that Bank One's Account Rules and Regulations referenced on the signature card contained an agreement to arbitrate, the court concludes that there exists a valid agreement to arbitrate between the plaintiffs and Bank One.

(b) Scope of the Agreement to Arbitrate

■ Defendants argue that "each of Plaintiffs' claims clearly arises from or relates to the deposit account from which the $800,000 was withdrawn, allegedly without authorization." [12] Although plaintiffs dispute the existence of an arbitration agreement with Bank One, they do not dispute that if an agreement exists, their claims against Bank One would fall within its scope. Instead, plaintiffs argue that because they have asserted claims against three entities that are not parties to any arbitration agreement, their claims are not arbitrable since they fall outside the scope of any arbitration agreement they may have entered with Bank One. Whether a dispute falls within the scope of an arbitration agreement is a matter of contract construction and a question of law for the court to decide. *See Pennzoil,* 139 F.3d at 1066. *See also Leander Cut Stone Co., Inc. v. Brazos Masonry, Inc.,* 987 S.W.2d 638, 640 (Tex.App.—Waco 1999, no writ).

Determining whether a dispute falls within the scope of an arbitration clause requires the court to characterize the arbitration clause as "broad" or "narrow." *Hornbeck Offshore Corp. v. Coastal Carriers Corp.,* 981 F.2d 752, 754 (5th Cir.1993). If the court finds that the clause is broad, any dispute between the parties falls within the scope of the clause if it is connected with or related to the contract. *Id.* Examples of broad clauses are those that cover: "any dispute or difference between the parties," "any dispute . . . with respect to the interpretation or performance of" the contract, "any controversy or claim arising out of or relating to this Agreement." *See Pennzoil,* 139 F.3d at 1067. *See also Prima Paint,* 87 S.Ct. at 1802–1803 (labeling as "broad" a clause requiring arbitration of "[a]ny controversy or claim arising out of or relating to this Agreement"); *Nauru Phosphate Royalties, Inc. v. Drago Daic Interests, Inc.,* 138 F.3d 160, 164–165 (5th Cir.1998) (holding that when parties agree to an arbitration clause governing "[a]ny dispute . . . arising out of or in connection with or relating to this Agreement," they "intend the clause to reach all aspects of the relationship"). A narrow clause requires the dispute to literally "arise out of

---

**12.** Defendants' Motion to Compel, Docket Entry No. 14, p. 4.

the contract" and relate to the parties' performance of the contract. *Pennzoil,* 139 F.3d at 1067. The main difference between these two characterizations is that a broad clause allows the arbitration agreement to embrace all disputes between the parties that have a "significant relationship to the contract regardless of the label attached to the dispute." *Id.* In determining whether the dispute in question falls within the scope of the arbitration agreement, "ambiguities as to the scope of the arbitration clause itself [are] resolved in favor of arbitration." *Volt,* 109 S.Ct. at 1254. *See also Mitsubishi Motors,* 105 S.Ct. at 3353 ("[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."); *Personal Security & Safety Systems, Inc. v. Motorola, Inc.,* 297 F.3d 388, 392 (5th Cir.2002) ("a valid agreement to arbitrate applies unless it can be said with positive assurance that the arbitration clause is not susceptible of an interpretation which would cover the dispute at issue").

The arbitration clause in this case states:

> Either party may, prior to the rendering of a judgment on *any claim, dispute or controversy of any nature, whether asserted individually or jointly* ("Claim") by either you or the Bank against the other, or against the employees, agents or assigns of the other, *arising from or relating in any way to this Agreement or your Account,* including Claims regarding the applicability of this arbitration provision or the validity of the entire Agreement, elect to have such claim resolved by binding arbitration.[13] (emphasis added)

The court concludes that this arbitration clause should be characterized as "broad"

because it encompasses "any claim, dispute or controversy of any nature, whether asserted individually or jointly ... arising from or relating in any way to this [*i.e.,* the arbitration] Agreement or your [*i.e.,* plaintiffs'] Account."[14] *See Pennzoil,* 139 F.3d at 1067.

### (1) Claims Asserted Against Bank One

■ Plaintiffs have asserted claims against Bank One for violation of federal securities laws, including the Securities and Exchange Act of 1934 and the Investment Company Act of 1940, and for fraud, conspiracy, negligent and fraudulent misrepresentation, breach of the duty of good faith and fair dealing, breach of contract, and conversion in violation of Texas law. Because all of plaintiffs' claims arise from a single dispute over whether funds were withdrawn from their deposit account at Bank One without authorization, and because the manner and type of authorization required for withdrawing funds from that account are necessarily governed by the plaintiffs' contract with Bank One, the court concludes that all of the claims plaintiffs have asserted against Bank One fall within the scope of the arbitration agreement included in their contract. *See Grigson v. Creative Artists Agency, L.L.C.,* 210 F.3d 524, 526 (5th Cir.), *cert. denied,* 531 U.S. 1013, 121 S.Ct. 570, 148 L.Ed.2d 488 (2000) (parties to such agreements cannot avoid them by casting their claims in tort, rather than in contract).

### (2) Claims Asserted Against Banc One Securities Corporation, Banc One Insurance Agency, Inc., and Bill Berry

■ Plaintiffs have asserted the same claims against Bank One against Banc One Securities Corporation, Banc One Insur-

---

**13.** Exhibit B–2 attached to Defendants' Motion to Compel, Docket Entry No. 14, third unnumbered page.

**14.** *Id.*

ance Agency, Inc., and Bill Berry. Plaintiffs argue that because these three defendants are not parties to any arbitration agreement that may exist between them and Bank One, the claims they have asserted against the three other defendants are not arbitrable since they fall outside the scope of any arbitration agreement that may exist with Bank One.

In *Grigson* the Fifth Circuit "allowed a non-signatory to a contract with an arbitration clause to compel arbitration under an equitable estoppel theory ... [where] the action is intertwined with, and dependent upon, that contract." *Id.* at 527. The *Grigson* court identified two circumstances under which a non-signatory can compel arbitration. First, "when the signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting its claims against the non-signatory." *Id., quoting MS Dealer Service Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir.1999). Second, "when the signatory to the contract containing an arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the non-signatory and one or more of the signatories to the contract." *Id., quoting MS Dealer*, 177 F.3d at 947. The *Grigson* court stressed that this is not a rigid test, and that each case turns on its facts. *Id.* The *Grigson* court also stressed that the decision to utilize equitable estoppel in this fashion is within the district court's discretion. *Id.* at 528. In this case the court concludes that both prongs of the *Grigson* test allow the three non-signatory defendants to compel arbitration.

The first prong of the *Grigson* test holds that "equitable estoppel applies when the signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting its claims against the non-signatory." *Id.* at 527, *quoting MS Dealer*, 177 F.3d at

947. Because the claims that plaintiffs have asserted against these three defendants are all based on the wrongful withdrawal of funds from plaintiffs' deposit account at Bank One, and because the requirements and processes for withdrawing funds from that account are necessarily governed by the plaintiffs' contract with Bank One, the court concludes that the plaintiffs must rely on the terms of their written agreement with Bank One to assert their claims against the non-signatory defendants.

The second prong of the *Grigson* test holds that equitable estoppel applies "when the signatory to the contract containing an arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the non-signatory and one or more of the signatories to the contract." *Id.* Although plaintiffs have asserted many different claims against the defendants, at the heart of each claim is plaintiffs' allegation that all the defendants acted in concert to fraudulently withdraw funds from their deposit account at Bank One and wrongfully use those funds to purchase a variable annuity invested in Bank One mutual funds not because it was a sound investment but because the purchase would benefit Bank One. Examination of the plaintiffs' First Amended Complaint demonstrates that both the factual and legal allegations that plaintiffs have asserted against Bank One, the signatory to the contract containing the arbitration clause, are inextricably intertwined with the factual and legal allegations that they have asserted against each of the non-signatory defendants. Plaintiffs' factual allegations are asserted against all of the defendants collectively:

8. At all times material hereto Defendant Bill Berry was within the course and scope of his employment for one or all of the remaining Defendants.

9. On or about October 4, 2000, at the request of Defendants, Carl Jureczki met with Bill Berry ...

10. Mr. Berry had been recommended to Mr. Jureczki as an investment advisor by other employees, agents or representatives of Defendants.

11. Also at this meeting were Mr. Berry and Lydia Selva–Dillon, Branch Manager at the Ella Branch and Plaintiffs' personal banker. Banc One Insurance Agency was also identified as a related company....

14. As a preliminary step to making a decision on whether he and his wife wanted to purchase the variable annuity, Mr. Jureczki partially filled out a number of forms which were presented to him by Defendants...

19.... [W]ithin twenty four hours of the October 4th meeting, Mr. Berry (or some other unknown vice principal, employee, agent or representative of Defendants) took it upon himself to withdraw $800,000.00 from Plaintiffs' savings account and purchase an annuity from American General.[15]

Plaintiffs' legal allegations are similarly asserted against all of the defendants collectively:

24. Defendants' acts and/or omissions constitute a violation of applicable federal laws, including but not limited to, Section 10(b) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78.

25. Defendants violated § 10(b) of the Securities Exchange Act of 1934 by ...

26.... Defendants committed fraud ...

27. Defendants made a false misrepresentation and/or omission of material facts, knowing their falsity and intending that Plaintiffs rely on them...

28. At all material times, Mr. Berry acted with the implied authority, actual authority or apparent authority of the remaining Defendants.

29. The means and process which Defendant Berry used to obtain Plaintiffs' money was a direct result of the policies and procedures set out by the remaining Defendants. As such, all Defendants had an intent to deceive, manipulate, or defraud.

30.... [T]he Banc One Defendants specifically held themselves out as an investment company...

32. Defendants directly assumed, fiduciary responsibilities to Plaintiffs, breached said duty and ... caused Plaintiffs the damages ...

33.... Defendants' acts and/or omissions ... establish all of the requisite elements to constitute common law fraud ...

34.... Defendants' acts and/or omissions ... establish all of the requisite elements to constitute a civil conspiracy ...

35.... Defendants' acts and/or omissions ... establish all of the requisite elements to constitute negligent misrepresentation, fraudulent misrepresentation, and a breach of their duty of good faith and fair dealings with Plaintiffs ...

36.... in the alternative, ... if it is found that there was a contract between the parties, ... the defendants jointly and severally breached that contract in failing to prudently provide investment

**15.** Plaintiffs' First Amended Complaint, Docket Entry No. 5, pp. 2–3.

advice and experience as warranted and promised. More specifically, the defendants took it upon themselves to diversify the income received from the plaintiffs into investment funds to economically benefit the defendants and not because such funds were the most suitable funds for investing money. For example money was invested in Bank One mutual funds not because such funds were the highest rated funds of a particular type but because such funds benefitted the defendants economically...

37.... Defendants' acts and/or omissions ... establish all of the requisite elements to constitute conversion ...[16]

Because neither the factual nor the legal allegations asserted in plaintiffs' complaint distinguish between the individual defendants, the court concludes that plaintiffs' claims against the non-signatory defendants are inextricably intertwined with and dependent upon their claims against Bank One. Because plaintiffs' allegation that the defendants acted in concert to withdraw funds from their deposit account without authorization cannot be resolved without examining the contract pursuant to which Bank One held plaintiffs' funds on deposit, and because that contract contained the arbitration agreement at issue in this case, the court concludes that plaintiffs should be compelled to arbitrate the claims they have asserted against the non-signatory defendants together with those asserted against Bank One pursuant to the doctrine of equitable estoppel articulated in *Grigson*. *Id.* at 525. *See also Hill v. G E Power Systems, Inc.*, 282 F.3d 343 (5th Cir.2002) (second prong of *Grigson* test

met because complaint alleged that a non-signatory "worked in tandem" with a signatory to misappropriate trade secrets).

### 2. *Unconscionability*

■ Having determined that the plaintiffs agreed to arbitrate their disputes with Bank One, the court must consider "whether legal constraints external to the parties' agreement foreclosed the arbitration of those claims." *OPE International,* 258 F.3d at 445. *See Mitsubishi,* 105 S.Ct. at 3354 ("Courts should remain attuned to well-supported claims that the agreement to arbitrate resulted from fraud or overwhelming economic power that would provide grounds 'for the revocation of any contract.' 9 U.S.C. § 2.").

Citing *Pony Express Courier Corp. v. Morris,* 921 S.W.2d 817, 821 (Tex.App.— San Antonio 1996, no writ), plaintiffs argue that the arbitration agreement contained in Bank One's Account Rules and Regulations is unconscionable as a matter of law.[17] In *Pony Express* the court said:

Although no single formula exists, proof of unconscionability begins with two broad questions: (1) How did the parties arrive at the terms in controversy; and (2) Are there legitimate commercial reasons justifying the inclusion of the terms? The first question, often described as the procedural aspect of unconscionability, is concerned with assent and focuses on the facts surrounding the bargaining process. The second question, often described as the substantive aspect of unconscionability is concerned with the fairness of the resulting agreement.

921 S.W.2d at 821, *citing Southwestern Bell Telephone Co. v. DeLanney,* 809 S.W.2d 493, 498–499 (Tex.1991). Plaintiffs argue that the procedural aspect of the

---

**16.** *Id.* at pp. 4–8.

**17.** Plaintiffs' Response to Defendants' Motion to Compel, Docket Entry No. 18, p. 10.

unconscionability test is met by Carl Jureczki's affidavit testimony that he was never given the ability to reject or negotiate the terms of the arbitration agreement, and that the substantive part of the unconscionability test is met by evidence that the booklet containing the Account Rules and Regulations is filled with pages of small print, that Bank One is unable to prove that plaintiffs either received a copy of the booklet or read it before signing the signature card, and that the Account Rules and Regulations are imposed purely at the insistence of Bank One and are, therefore, one-sided and inherently unfair.

The court is not persuaded that the arbitration agreement is unconscionable. First, there is nothing *per se* unconscionable about arbitration agreements. *See Hughes Training Inc. v. Cook,* 254 F.3d 588, 593 (5th Cir.2001), *citing EZ Pawn,* 934 S.W.2d at 90. Second, plaintiffs' argument that the arbitration agreement is substantively unconscionable because plaintiffs were unable to negotiate its terms has been rejected by the Fifth Circuit. *See Dillard v. Merrill Lynch, Pierce, Fenner & Smith,* 961 F.2d 1148, 1154–1155 (5th Cir.1992) (holding that adhesion contracts requiring arbitration of securities disputes are not unconscionable as a matter of law). Third, plaintiffs' arguments that the arbitration agreement is procedurally unconscionable because it is included in a booklet filled with pages of small print, because its benefits are one-sided, and because its terms are not supported by the best evidence lack merit. *See Webb v. Investacorp, Inc.,* 89 F.3d 252, 258 (5th Cir.1996) (rejecting series of similar procedural challenges to arbitration clause); and *EZ Pawn,* 934 S.W.2d at 90 (unequal bargaining power does not establish grounds for defeating an agreement to arbitrate). Finally, plaintiffs' assertions that the arbitration agreement is unconscionable because they did not receive or read the account rules and regulations referenced on the signature card before they signed the signature card pertain to the unconscionability of their entire contract with Bank One and are not sufficiently focused on the arbitration agreement to preclude its enforcement. *See Shearson Lehman Brothers, Inc. v. Kilgore,* 871 S.W.2d 925, 927 (Tex.App.—Corpus Christi 1994) (when a party merely fails to read the contract that contains an arbitration clause of which he is unaware fraud is not sufficiently focused on the arbitration agreement). While fraud in the inducement of an arbitration agreement is a matter for the trial court, fraud in the inducement of an entire contract is a matter for the arbitrator to decide. *See Prima Paint,* 87 S.Ct. at 1805–1806; and *Pepe International Development Co. v. Pub Brewing Co.,* 915 S.W.2d 925, 930 (Tex. App.—Houston [1st Dist.] 1996, no writ).

### III. *Motion to Stay*

The FAA, 9 U.S.C. § 3, states:

If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3. The Fifth Circuit has interpreted the express terms of § 3 to mean only that the court cannot deny a stay when one is properly requested. *See Alford v. Dean Witter Reynolds, Inc.,* 975 F.2d 1161, 1164 (5th Cir.1992). "This rule, however, was not intended to limit dismissal of a case in the proper circumstances."

*Id.* If all of the issues raised before the court are arbitrable, dismissal of the case is not inappropriate. *Id.* As the *Alford* court explained:

> Although we understand that plaintiff's motion to compel arbitration must be granted, we do not believe the proper course is to stay the action pending arbitration. Given our ruling that all issues raised in this action are arbitrable and must be submitted to arbitration, retaining jurisdiction and staying the action will serve no purpose. Any post-arbitration remedies sought by the parties will not entail renewed consideration and adjudication of the merits of the controversy but would be circumscribed to a judicial review of the arbitrator's award in the limited manner prescribed by law.

*Id., quoting Sea–Land Service, Inc. v. Sea–Land of Puerto Rico, Inc.,* 636 F.Supp. 750, 757 (D.Puerto Rico 1986). *See also Fedmet Corp. v. M/V BUYALYK,* 194 F.3d 674 (5th Cir.1999). "The weight of authority clearly supports dismissal of the case when all of the issues raised in the district court must be submitted to arbitration." *Alford,* 975 F.2d at 1164.

In this case the language of the arbitration agreement mandates arbitration for any dispute "arising from or relating in any way to" the agreement and/or the plaintiffs' deposit account at Bank One. In light of the court's conclusion that the plaintiffs must be compelled to arbitrate all the claims asserted in this action, "retaining jurisdiction and staying the action will serve no purpose." *Id.* Although the *Alford* court dismissed the action with prejudice, the defendants in that action sought dismissal. *Id.* at 1163. When, as here, the defendants have not sought dismissal, dismissal without prejudice is the appropriate measure. *See Sea–Land,* 636 F.Supp. at 757. "This course of action will also make the arbitrability issue immediately appealable." *Id.See also Green Tree Financial Corp.—Alabama v. Randolph,*

531 U.S. 79, 121 S.Ct. 513, 521, 148 L.Ed.2d 373 (2000); *American Heritage Life Insurance Co. v. Orr,* 294 F.3d 702, 707–708 (5th Cir.2002), *cert. denied,* —— U.S. ——, 123 S.Ct. 871, 154 L.Ed.2d 775 (2003). Because there are no live controversies remaining in this action, the court concludes that it should dismiss plaintiffs' claims without prejudice.

### IV. *Conclusions*

For the reasons set forth above, the court concludes that a valid agreement to arbitrate exists between the plaintiffs and Bank One, that the claims the plaintiffs have asserted against Bank One and the three non-signatory defendants are included within the scope of that agreement, and that the agreement is not unconscionable as a matter of law. Accordingly, Defendants' Motion to Compel Arbitration (Docket Entry No. 14) is **GRANTED**. Because the court has concluded that the plaintiffs must be compelled to arbitrate all the claims asserted in this action, retaining jurisdiction and staying the action will serve no purpose. Accordingly, this action will be dismissed without prejudice.